UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE L. OBRADOVICH, et al.,<br><br>Defendants.<br><br>GEORGE L. OBRADOVICH and JENNIFER M. OBRADOVICH;<br><br>Counter/Third-Party Plaintiffs,<br><br>v.<br><br>FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), et al.,<br><br>Counter/Third-Party Defendants. | Case No. 1:14-cv-4664<br><br>Judge: Hon. Andrea R. Wood<br><br>Magistrate: Hon. Sidney I. Schenkier |

**MEMORANDUM IN SUPPORT OF
FANNIE MAE AND SETERUS'S MOTION TO DISMISS**

Counter/Third-Party Defendants Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus") (collectively, the "Fannie Mae Defendants"), by their attorneys, submit this Memorandum in Support of their Motion to Dismiss the Counterclaims and Third Party Claims ("Counterclaim") of George and Jennifer Obradovich ("Borrowers") pursuant to Federal Rule of Civil Procedure 12(b)(6).

**Introduction**

1

Borrowers' Counterclaim fails to state any valid cause of action against the Fannie Mae Defendants, and therefore should be dismissed.

Borrowers attempt to assert the following seven causes of action: (i) supposed trespass to real property, (ii) supposed intrusion upon seclusion, (iii) supposed violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), (iv) supposed breach of contract, (v) supposed violation of the Fair Debt Collection Practices Act (the "FDCPA"), (vi) supposed negligence, and (vii) supposed tortious interference/interference with contractual relations.

The FDCPA claims and the tortious interference claims are not alleged against Fannie Mae. Additionally, for the reasons discussed in more detail below, each of the purported claims fails to state any valid cause of action.

Accordingly, as more fully discussed below, Borrowers' Counterclaim should be dismissed with prejudice in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

**Background**

On May 26, 2009, Borrowers obtained a mortgage loan in the amount of $205,450 with Bank of America, N.A. (the "Subject Loan"), which loan is by a mortgage (the "Subject Mortgage") on the property at issue in this foreclosure action (the "Subject Property". *See* Mortgage (Ex. B to Counterclaims). Fannie Mae and the Borrowers are also involved in a foreclosure action in this case related to the Subject Property. *See* Counterclaim, ¶ 3.

Borrowers are residents of the State of Florida, and have not lived in the Subject Property since August 2011. *See* Counterclaim, ¶¶ 9, 18. Starting in August 2011, Borrowers leased the Subject Property until they subsequently evicted their tenants for failing to pay rent. *See* Counterclaim, ¶¶ 18, 19.

In September 2013, Borrowers defaulted on the Subject Loan and listed the Subject Property for a short sale. *Id.*, ¶¶ 17, 20. Borrowers allege they identified a short sale buyer of the Subject Property in October 2013, and a short sale was supposedly approved by Fannie Mae on February 25, 2014. *Id.*, ¶¶ 25, 34.

Borrowers allege that on March 17, 2014, the short sale buyers requested a walk-through of the Subject Property, but they initially could not enter the Subject Property because the locks had been changed. *Id.*, ¶ 37. However, that same day, Seterus provided Borrowers with the lock box code. *Id.*, ¶¶ 38-40.

Borrowers assert that "[u]pon entering the subject property, [Borrowers] found the home destroyed. The living room was covered in water, and the radiators were covered with holes and rust spots. The main water supply had been shut off and secured with a zip tie." *Id.*, ¶ 40. According to Borrowers, "[d]uring winterization [Defendants] failed to drain the radiators prior to shutting off the water, causing the water left inside the radiators to freeze and rupture the pipes. The water had soaked the floor boards and ceilings, causing them to rupture and develop toxic mold." *Id.*, ¶ 44.

Borrowers allege their homeowner's insurance was cancelled on March 25, 2014, supposedly at the request of the Fannie Mae Defendants. *Id.*, ¶ 51.

Due to the alleged damage to the Subject Property, the short-sale buyers reduced their offer to purchase, which offer was rejected by Fannie Mae. *Id.*, ¶¶ 50, 57.

Borrowers allege that in May of 2014 they "hired contractors to inspect the mold damage and water damage to the subject property. According to their reports, the subject property had toxic mold and permanent damage. The contractor concluded that water damage resulted from Safeguard's improper winterization." *Id.*, ¶ 59.

3

In June of 2014, Fannie Mae and Seterus offered Borrowers the option of a deed in lieu of foreclosure. *Id.*, ¶¶ 64-65.

## Standard of Review

In order to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain allegations that 'state a claim to relief that is plausible on its face.'" *See, e.g., McCauley v. City of Chicago*, 671 F. 3d 611, 615 (7th Cir. 2011). "A claim has a facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The United States Court of Appeals for the Seventh Circuit has "interpreted *Twombly* and *Iqbal* to require the plaintiff to 'provide some specific facts' to support the legal claims asserted in the complaint." *McCauley*, 671 F. 3d at 616, citing *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "The degree of specificity required is not easily quantified, but 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F. 3d at 616, citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

In evaluating a motion to dismiss, the court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

To the extent an exhibit attached to or referenced by the complaint contradicts the complaint's allegations, the exhibit takes precedence. *See, e.g., Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

## Argument

I.  **Borrowers' Supposed Trespass Claim Fails.**

The Fannie Mae Defendants cannot be liable for trespass because they had a legal right to enter upon the Subject Property under the terms of the Subject Mortgage to protect their security interests. Accordingly, Borrower's purported trespass claim fails, and should be dismissed with prejudice.

"A trespass is the entry onto another's land without permission, invitation, or other right." *Handle v. Stevens*, 224 Ill. App. 3d 1046, 1055, 586 N.E.2d 826 (2d Dist. 1992). Here, there can be no trespass because the Fannie Mae Defendants had the right under the terms of the Subject Mortgage to enter the Subject Property.

Initially, the Subject Mortgage may be considered by this Court in reviewing the Motion to Dismiss, as it is attached to the Counterclaim. *See, e.g., Geinosky*, 675 F.3d at 745, n.1. Moreover, to the extent the Subject Mortgage contradicts Borrower's allegations, the Subject Mortgage takes precedence. *See, e.g., Forrest*, 507 F.3d at 542.

The Subject Mortgage provides as follows in relevant part:

> "**If (a) Borrower fails to perform the covenants and agreements** contained in this Security Instrument, … **or (c) Borrower has abandoned the Property**, then **Lender may** do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and **securing and/or repairing the Property** … **Securing the Property includes, but is not limited to,** entering the Property to make repairs, **change locks,** replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off."

*See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim) (emphasis added).

Borrowers failed to perform the covenants and agreements contained in the Subject Mortgage by defaulting on their mortgage loan in September 2013. *See* Counterclaim, ¶¶ 3, 17. Additionally, since at least September 2013, the Subject Property was abandoned, as the Borrowers resided in Florida and their tenants had been evicted. *Id.*, ¶¶ 17-20.

Accordingly, under the express language of the Subject Mortgage, the Fannie Mae Defendants had the right to enter the Subject Property. Borrowers' purported trespass claim therefore fails, and should be dismissed with prejudice.

**II.     Borrowers' Supposed Intrusion Upon Seclusion Claim Fails.**

Borrowers' purported intrusion upon seclusion claim fails because the Fannie Mae Defendants had a right to enter upon the Subject Property, and because the Subject Property was vacant and abandoned.

The tort of intrusion upon seclusion is newly-recognized in Illinois and originates from a right of privacy. Generally, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Lawlor v. North American Corporation of Illinois*, 2012 IL 11530, ¶33, 983 N.E.2d 414, citing Restatement (Second) of Torts § 652B (1977).

Borrowers do not allege that they kept any personal property items at the Subject Property, and they expressly allege they were not living in the Subject Property, and had not been since 2011. *See* Counterclaim, ¶ 18. Indeed, the Subject Property was vacant at the time Safeguard allegedly "winterized" the property in January 2014. *Id.*, ¶¶ 18, 47. Borrowers therefore had no "seclusion" that could be intruded upon.

Moreover, as referenced above, the Fannie Mae Defendants had the right under the Mortgage to enter the Subject Property. Accordingly, Borrowers' purported intrusion upon seclusion claim fails, and should be dismissed with prejudice and without leave to amend.

**III.    Borrowers' Supposed ICFA Claim Fails.**

Borrowers' purported claim under the ICFA fails because Borrowers do not allege that the

6

Fannie Mae Defendants engaged in any deceptive or unfair acts or promises with the intent that the Borrowers rely on the deceptive or unfair practice; and that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce, as required.

In order to state a claim under the ICFA, a plaintiff must show: "(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012).

Claims brought under the ICFA, must meet the same heightened pleading requirements of Fed. R. Civ. P. 9(b) as common law fraud claims. *Camasta v. Jos. A. Bank Clothiers, Inc.*, Case No. 13-2831, 2014 U.S. App. LEXIS 14871, *7 (7th Cir. Aug. 1, 2014), citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446-47 (7th Cir. 2011).

Moreover, when the plaintiff is a private party, "an action brought under the ICFA requires the plaintiff to show he suffered 'actual damage' as a result of the defendant's violation of the act." *Id*, at*14-15, citing 815 ILCS 505/10a, *Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010). "In a private ICFA action, the element of actual damages 'requires that the plaintiff suffer actual pecuniary loss." *Id*.

Borrowers attempt to allege several supposed violations of the ICFA by the Fannie Mae Defendants: (i) wrongfully changing the locks and secured the property; (ii) changing the locks without a locksmith's license, in violation of the Private Detective, Private Alarm, Private Security, and Locksmith's Act of 2004, 225 ILCS 447/5-3, et seq. (the "Locksmith's Act"); (iii) inducing Borrowers to submit short sale applications when Fannie Mae had no intention of ever approving a short sale; and (iv) supposedly inducing Borrowers to submit claims for repair while

7

Seterus had no intention of ever making repairs. *See* Counterclaim, ¶¶ 103-19. Each of Borrowers' attempts to assert an ICFA claim fails.

Initially, as explained above, the Fannie Mae Defendants had a right to secure the Subject Property, and to change the locks to the Subject Property. Borrowers' allegations related to the alleged wrongful changing of the locks on the Subject Property therefore fail.

Moreover, the Locksmith Act is not one of the enumerated statutes the violation of which may constitute a violation of the ICFA, does not even provide for a private right of action, and does not even apply to Safeguard.

The Locksmith Act provides that only licensed locksmiths may advertise or perform locksmith services. *See* 225 ILCS 447/30-35. The Act provides an exemption for persons "employed exclusively by only one employer in connection with the exclusive activities of that employer, providing that person does not hold himself or herself out to the public as a locksmith." 225 ILCS 447/30-5(9). Borrowers do not allege that Safeguard's employees advertise their services as locksmiths.

Additionally, Borrowers' allegations do not meet the heightened pleading standard of an ICFA claim, as they do not allege who said what, what was said, and the when was it said, as required. *See, e.g., Camasta*, 2014 U.S. App. LEXIS 14871, *7.

Borrowers also do not allege how they were deceived by the Fannie Mae Defendants' supposed misrepresentations. In order "to properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134; 776 N.E.2d 151 (2002). The "deception" must have proximately caused the plaintiff's damages. *Id.*

Borrowers merely allege that they submitted short sale applications and property repair

requests. Borrowers make no attempt to allege that they were "deceived" by the supposed representations or that the supposed representations proximately caused their damages.

Finally, Borrowers, do not -- and cannot -- allege damages. Borrowers seem to claim that they have been damaged because the Subject Property was damaged, is in foreclosure, and the short sale was rejected. However, the Fannie Mae Defendants' supposed representations could not have caused these damages because the Subject Property was in foreclosure before the alleged representations were even made.

Moreover, Borrowers allegations that they were denied a short sale cannot form the basis of a damages claim, because they admit they were offered a deed in lieu of foreclosure. See Counterclaim, ¶¶ 64-65. Borrowers would have received no proceeds from the short sale, and they do not allege how a short sale would have put them in a better position than a deed in lieu. In sum, Borrowers do not allege that they suffered any actual damages.

Accordingly, Borrowers' purported ICFA claim fails, and should be dismissed with prejudice.

**IV. Borrower's Supposed Breach of Contract Claim Fails.**

Borrowers' breach of contract claim fails because the clear terms of the Subject Mortgage provide that Fannie Mae had the right, but had no duty, to winterize the property. In addition, the Fannie Mae Defendants had the right, but not the duty, to obtain force-placed homeowners' insurance for the Subject Property.

Borrowers allege that the Fannie Mae Defendants somehow breached the express terms of the Subject Mortgage by: (i) supposedly failing to protect the value of the Subject Property; (ii) supposedly failing to drain the water pipes and radiators; (iii) supposedly creating and failing to eliminate dangerous conditions at the Subject Property; (iv) supposedly committing waste at

9

the Subject Property; (v) supposedly cancelling or causing the cancellation of homeowner's insurance on the Subject Property; and (vi) supposedly failing to provide notices required by the Mortgage.

Borrowers' allegations cannot support a claim for breach of contract. Section 9 of the Mortgage allows the Fannie Mae Defendants to secure the Subject Property upon the abandonment of the Subject Property by Borrowers, or their default. The Subject Mortgage provides that "[a]lthough Lender may take action under this Section 9, **Lender does not have to do so and is not under any duty or obligation to do so**. **It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9**." *See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim) (emphasis added).

Similarly, the Fannie Mae Defendants had the right -- but not the duty -- to purchase homeowner's insurance. Section 25 of the Subject Mortgage provides that "[u]nless Borrower provides Lender with evidence of the insurance coverage required by Borrowers' agreement with Lender, Lender **may** purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This Insurance may, but need not, protect Borrower's interests." *See* Mortgage, p. 11, ¶ 25 (Ex. A to Counterclaim) (emphasis added).

The Fannie Mae Defendants were not under any obligation to purchase homeowners' insurance and cannot be held liable for failing to do so.

Borrowers also attempt to claim that Fannie Mae breached the Mortgage by supposedly violating certain "implied provisions." However, the Subject Mortgage does not create or rely upon any implied provisions. The express terms of the mortgage are clear. Fannie Mae had a right, **but not a duty**, to secure and winterize the Subject Property and to obtain insurance on the Subject Property.

Finally, Borrowers' alleged breach of contract claim also fails because they have not alleged any damages caused by the Fannie Mae Defendants' supposed breach of the mortgage. As discussed above, Borrowers allege the damage to the Subject Property caused the rejection of a short sale. However, Borrowers concede they were subsequently offered a deed in lieu of foreclosure, and they do not allege how a deed in lieu puts them in a worse position than they would have been in had the short sale been approved.

For all these reasons, Borrowers' purported breach of contract claim fails, and should be dismissed with prejudice.

V.  **Borrower's Supposed Negligence Claim Fails.**

Borrowers' negligence claim fails because they do not allege they suffered any actual damages proximately caused by the Fannie Mae Defendants.

Borrowers allege that the Fannie Mae Defendants, through Safeguard, negligently performed the winterization of the Subject Property, and that they supposedly entitled to actual damages, punitive damages, and attorney's fees.

First, Borrowers are not entitled to either attorneys' fees or punitive damages. Attorneys' fees are only available pursuant to an express contractual provision or pursuant to a specific statutory authorization, and Borrowers do not support any legally recognizable basis for attorneys' fees. In addition, Borrowers have not alleged any actions or omissions by the Fannie Mae Defendants that rise to the level of willful and wanton conduct. Punitive damages are not available.

In order to plead negligence, a claimant must allege "facts that establish the existence of a duty, a breach of the duty, and an injury to the plaintiff which was proximately caused by the breach." *Hills v. Bridgeview Little League Ass'n,* 195 Ill. 2d 210, 745 N.E.2d 1166, 1178 (2000).

Here, as referenced above, Borrowers have not pled any damages proximately caused by the Fannie Mae Defendants.

Again, Borrowers do not allege how the rejection of a short sale puts them in a worse position than if they were to accept the deed in lieu of foreclosure. Thus, Borrowers do not allege they actually suffered any damages.

Accordingly, Borrowers' purported negligence claims fails, and should be dismissed.

**VI. Borrower's Supposed FDCPA Claim Fails.**

Borrowers' FDCPA allegations against Seterus fail, because under the Subject Mortgage, Seterus was authorized to enter the Subject Property, to secure the Subject Property, and to winterize the Subject Property on behalf of Fannie Mae. Seterus was also authorized to pass-along the cost of securing and winterizing the Subject Property to Borrowers.

Borrowers allege Seterus violated 15 USC § 1692e by entering the Subject Property and changing the locks, when it supposedly did not have the right to do so. *See* Counterclaim, ¶¶ 159-61. Borrowers do not allege which specific provision of section 1692e, which generally prohibits the "false, deceptive, or misleading representation in connection with the collection of any debt," this conduct supposedly violates. Indeed, it is unclear how winterizing the Subject Property may constitute the "collection of debt."

Additionally, Seterus, as servicer for Fannie Mae, had the right under the Subject Mortgage to enter the Subject Property and change the locks. *See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim).

Borrowers next contend that Seterus violated 15 USC § 1692d, which prohibits a debt collector from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," by "forcibly evicting [Borrowers],

and by damaging, destroying [*sic*] real property." *See* Counterclaim, ¶ 163. Borrowers also allege Seterus "harassed and oppressed" Borrowers by providing them with false information regarding the status of repairs, facilitating the denial of the short sale, and causing damage to the Subject Property." *Id*., ¶ 164.

Again, it is unclear how these actions may be considered to be "in connection with the collection of debt." Additionally, Borrowers were not "evicted," as they admit they were not living in the property. *Id*., ¶ 18. Further, the actions taken in winterizing the property were expressly permitted under the Subject Mortgage.

Borrowers next allege Seterus violated 15 USC 1692f, which prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," by supposedly changing the locks on the Subject Property when it allegedly did not have the right to do so, and supposedly in violation of the Locksmith Act. *Id*., ¶¶ 165-71. Notwithstanding the fact that changing the locks is not the collection of debt, Seterus had the right to do so under the terms of the Subject Mortgage. Additionally, as discussed above, the Locksmith Act does not apply here.

Finally, Borrowers allege Seterus violation 15 USC §§ 1692f, e and g(a) by supposedly "reporting fees against [Borrowers] and their property that were not authorized by the mortgage contract or the law." *See* Counterclaim, ¶ 172.

Borrowers' allegations fail, because the Subject Mortgage expressly provides that these costs may be passed along to Borrowers by increasing the principal amount due under the Note. The Subject Mortgage provides that "[a]ny amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument." *See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim).

In sum, each of the purported FDCPA claims fail, as the conduct alleged against Seterus was expressly authorized under the terms of the Subject Mortgage. Accordingly, Borrowers' purported FDCPA claims fail, and should be dismissed with prejudice.

**VII. Borrower's Supposed Tortious Interference Claim Fails.**

Borrowers' purported claim for tortious interference with contractual relations fails because Borrowers cannot allege that they suffered any damages, and because Seterus could not have interfered in the contract.

Borrowers allege Seterus "intentionally or willfully caused damage to the subject property that decreased the value of the subject property and resulted in the cancellation of the short sale contract by the Buyers and Fannie Mae." *See* Counterclaim, ¶ 178.

To establish a claim for tortious interference with a contract under Illinois law, a plaintiff must demonstrate "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *O'Driscoll v. Argosy Univ.*, Case No. 12 C 10164, 2014 U.S. Dist. LEXIS 23201, *9-10 (N.D. Ill. 2014), quoting *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012).

Initially, Borrowers tortious interference claim fails, because they do not allege a breach of the short sale contract. Instead, Borrowers allege that the potential buyers and Fannie Mae "cancelled" the short sale. *See* Counterclaim, ¶ 178. Borrower does not allege that Fannie Mae was contractually obligated to accept the short sale, or that its denial of the short sale was a breach of that obligation. For this reason, Borrowers' purported tortious interference claim fails.

Borrowers' purported claim also fails because an agent generally cannot tortiously

interfere with the contracts of its principal. *See, e.g., Traum v. Equitable Life Assurance Soc'y*, 240 F.Supp.2d 776, 792 (N.D. Ill. 2002) ("An agent of a principal is conditionally privileged against a claim that it interfered in a third party's relationship with the principal").

Borrowers allege that Seterus was acting in its scope as Fannie Mae's agent at all relevant times. *See* Counterclaim, ¶¶ 73-81.

"To overcome the privilege, plaintiffs must allege or prove that a defendant acted in its own interests and contrary to the interests of its principal, or engage in conduct totally unrelated or antagonistic to the interest giving rise to the privilege." *Citylink Group, Ltd. v. Hyatt Corp.*, 313 Ill.App.3d 829, 841, 729 N.E.2d 869, 877 (1st Dist. 2000).

Borrowers do not allege that Seterus acted in its own interests, or contrary to the interests of Fannie Mae, or that it engaged in conduct antagonistic to Fannie Mae's interests. For this reason also, Borrowers tortious interference claim fails.

In addition, Borrowers' tortious interference claim fails because Borrowers do not – and cannot -- plead damages. As referenced above, the Subject Property is in foreclosure, and Borrowers admit they have been provided the opportunity for a deed in lieu of foreclosure. Borrowers do not allege how they were damaged by being offered a deed in lieu as opposed to a short sale.

Accordingly, Borrowers' purported tortious interference claim fails, and should be dismissed with prejudice.

WHEREFORE, Fannie Mae and Seterus request that this Court dismiss the Counterclaim in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice and without leave to amend, and provide such further and additional relief as it deems just and appropriate.

| | |
|---|---|
| Date: September 3, 2014 | Respectfully submitted, |
| | **FEDERAL NATIONAL MORTGAGE ASSOCIATION and SETERUS, INC.,** |
| Ralph T. Wutscher | |
| Jeffrey T. Karek | |
| Charles J. Ochab | |
| MCGINNIS WUTSCHER BEIRAMEE LLP | |
| 105 W. Madison Street, 18th Floor | |
| Chicago, Illinois 60602 | |
| Tel. (312) 416-6170 | By: /s/ Jeffrey T. Karek |
| Fax (312) 284-4751 | One of Their Attorneys |

**Certificate of Service**

    Jeffrey T. Karek, an attorney, certifies that on **September 3, 2014**, he caused the service of a true and correct copy of this Motion and any referenced exhibits via ECF on all parties who are Filing Users.

                                                      /s/ Jeffrey T. Karek