## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Federal National Mortgage Association, | ) | |
| Plaintiff, | ) | Case No.: 14 cv 4664 |
| | ) | |
| vs. | ) | Judge Andrea R. Wood |
| | ) | |
| George L. Obradovich, et al. | ) | |
| Defendants. | ) | |

## SAFEGUARD PROPERTIES, LLC MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THIRD-PARTY PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

NOW COMES Third-Party Defendant SAFEGUARD PROPERTIES, LLC (hereinafter "Safeguard"), by and through its attorneys, SmithAmundsen LLC and hereby submits this Memorandum in Support of its Motion to Dismiss the Third Party Claims brought against it by Third-Party Plaintiffs George and Jennifer Obradovich ("Borrowers").

### Introduction

Borrowers' Third-Party Claims fail to state any valid cause of action against Safeguard and should therefore be dismissed with prejudice. Six causes of action are alleged against Safeguard: trespass to real property (Count I); intrusion upon seclusion (Count II); violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA") (Count III); negligence (Count V); violation of the Fair Debt Collection Practices Act (the "FDCPA") (Count VI); and tortious interference/interference with contractual relations (Count VII).[1] For the reasons discussed in more detail below, each of the purported claims fails to state a valid cause of action and must be dismissed as a matter of law.

---

[1] On September 3, 2014 Defendants Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus") filed a Motion to Dismiss and corresponding Memorandum in support of their motion. Many of the arguments contained in this earlier motion to dismiss are equally applicable to Safeguard's position in this matter. To the extent applicable, Safeguard hereby adopts the September 3rd Motion and Memorandum filed by Fannie Mae and Seterus.

## Background[2]

In May 2009 the Borrowers obtained a mortgage with Bank of America (hereinafter "the Loan") for over $200,000. This mortgage relates to the real property at issue (hereinafter "the property") in the original foreclosure action brought by Fannie Mae. *See*, Mortgage (Ex. B to Counter-Plaintiffs' Counterclaims and Third-Party Claims), *Counterclaim*, ¶ 3.

The Borrowers have not lived at the Property since August 2011 and are currently Florida residents. *Counterclaim*, ¶¶ 9, 18. The Borrowers began leasing the Property when they moved out, and have since evicted their tenants. *Counterclaim*, ¶¶ 18, 19. Roughly two years after they moved out, Borrowers defaulted on the Loan and listed the Property for a short sale. *Counterclaim*, ¶¶ 17, 20. Borrowers' allegations suggest that they identified a potential buyer for the Property in October 2013 and that a short sale was allegedly approved by Fannie Mae in February 2014. *Counterclaim*, ¶¶ 25, 34. The Counterclaim alleges that this buyer sought a walk-through of the property on March 17, 2014. *Counterclaim*, ¶ 37. It is alleged that damage to the property was found at that time, namely water in the living room and damage to the radiators, and that this was caused by "Safeguard or its agent, vendor, or subcontractor." *Counterclaim*, ¶ 40, 44. The Borrowers allege that radiator pipes were not properly drained prior to water shutoff, causing the water left inside to freeze and rupture the pipes. *Counterclaim*, ¶ 44. It is alleged that as a result of this property damage the short-sale buyers reduced their offer; this new, lower offer was then rejected by Fannie Mae. *Counterclaim*, ¶¶ 50, 57. Since then Fannie Mae has offered the Borrowers a deed in lieu of foreclosure, an offer that has up until this time has not been accepted by the Borrowers. *Counterclaim*, ¶¶ 64-5.

---

[2] Third-Party Plaintiff has made the following factual allegations that, for the purposes of this motion only, are to be taken as true. Safeguard reserves the right to deny and/or challenge any of the allegations in the pleading going forward.

**Standard of Review**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under the federal pleading standard, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2006). In other words, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934–35 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). In considering the motion to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012).

**Argument**

I.  **Borrowers' Trespass claim in Count I fails because under the mortgage, Safeguard had a legal right to enter the Property and secure the corresponding interests.**

A claim for trespass requires the intentional invasion of the owner's exclusive possession of real estate that detracts from the owner's use. *Johnson v. Smith*, 878 F.Supp. 1150, 1153 (N.D. Ill. 1995). The Borrowers did not have the exclusive right to possess the property because they abandoned it and left it vacant. Counterclaim, ¶¶ 3, 17-20. Thus, it was appropriate and Safeguard had the right, to issue work orders to its independent contractors enter the property, secure it and otherwise protect the Lender's interest in the property. In relevant part, the Mortgage provides as follows:

> **If (a) Borrower fails to perform the covenants and agreements** contained in

> this Security Instrument, ... **or (c) Borrower has abandoned the Property,** then **Lender may** do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and **securing and/or repairing the Property ••• Securing the Property includes, but is not limited to,** entering the Property to make repairs, **change locks,** replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

*See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim) (emphasis added).[3] Thus, the language of the Mortgage provides for entry into the Property. *C.f., Flippin v. Aurora Bank, FSB, et al*, 2012 WL 3260449 (N.D. Ill. 2012) (trespass claim was allowed to stand because property was not vacant and properly up kept). What's more, regulations and statutes reflect a strong public policy in favor of the maintenance and preservation of properties that are vacant and in foreclosure. *See, e.g., 24 C.F.R. § 203.377* (mandating that in certain cases, foreclosed-upon properties be protected and preserved by the mortgagee); *720 ILCS 5/21-3(e-5) (1)-(3)*. Safeguard should not be held liable for taking action allowed under the mortgage agreement and that complies with general public policy to preserve and protect vacant, forclosed property.

  II.  **Borrowers' Intrusion Upon Seclusion claim in Count II fails because Safeguard had a right to enter the Property because the Borrowers had no "seclusion" because they did not live there and otherwise abandoned it.**

The following elements are necessary to in order to prove and/or allege the tort of intrusion upon seclusion: (1) unauthorized intrusion into seclusion; (2) the intrusion was highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) anguish and suffering resulted. *Jackson v. The Bank of New York, et al.*, --- F.Supp.2d ---, 2014 WL 3882193, p. 10 (N.D. Ill. 2014).

There is no allegation that personal property remained at the Property; in fact, it

---

[3] The Mortgage may be considered when reviewing a Motion to Dismiss when it is attached to the Counterclaim. *See, e.g., Geinosky v. City of Chicago,* 675 F.3d 743, 745 (7th Cir. 2012).

is expressly alleged that the Borrowers had not been living at the Property for over two years, and that the property was vacant during the relevant time period. *Counterclaim*, ¶¶ 18, 47. Borrowers therefore had no "seclusion" to be intruded upon. What's more, no person could be "highly offended" by any purported intrusion if the Borrowers did not live at the Property; they did not even "learn" of the intrusion until other people visited the property during the walk-through some time thereafter. *Counterclaim*, ¶¶ 37, 40. Along similar lines, the matter could not have been "private" if the property was vacant and "learned of" through another party, i.e., the potential buyer during the walk-through. *See*, *Jackson*, 2014 WL 3882193, p. 10 (Safeguard is not liable for intrusion upon seclusion claim because "Plaintiff was not home and was unaware of the alleged intrusion for several weeks"). These facts also preclude the claim for "anguish" since Borrowers were not at home when the "intrusion" allegedly occurred. *Id.*

Lastly, the Borrowers can never sustain a cause of action for this tort because Safeguard had the right under the Mortgage to issue work orders to its independent contractors to enter the Property, as discussed in Part 1 above. Accordingly, Borrowers' purported intrusion upon seclusion claim should be dismissed with prejudice.

**III.** **The ICFA does not apply in this instance because, among other reasons, Safeguard is not alleged to have engaged in any deceptive or unfair acts or promises with the intent that the Borrowers rely on those deceptive or unfair practice. What's more, Borrowers cannot allege that the purported unfair or deceptive practice occurred during a course of conduct involving trade or commerce, as required.**

Count III attempts to state a claim under the ICFA. *Counterclaim,* ¶¶ 102-119. In order to state such a claim, one must plead and prove the following: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134,

5

149 (2002); *Zekman v. Direct Am. Marketers,* 182 Ill. 2d 359, 373 (1998); *Connick v. Suzuki Motor Co.,* 174 Ill. 2d 482, 501 (1996). This Court has held that a plaintiff must also allege a misrepresentation of fact to state a claim. *Randazzo v. Harris Bank Palatine, N.A.*, 104 F.Supp 2d 949, 954 (N.D. Ill. 2000). A complaint for deceptive practices brought under the ICFA must be pled with the same specificity as a claim for common law fraud.[4] *Davis v. N.G. Mortgage Corp.*, 369 F.3d 869, 883 (7th Cir. 2005); *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 501 (1996); *Elson v. State Farm Fire & Cas. Co.*, 295 Ill. App. 3d 1, 14 (1st Dist. 1998).

The ICFA does not apply because the Borrowers are not consumers within the meaning of the act. A "consumer" is defined as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e). The Complaint alleges only that each Plaintiff is a consumer as defined in the ICFA but provides no facts in support. *Counterclaim* ¶ 103. There is no allegation that Borrowers purchased or contracted to purchase any merchandise from any entity, let alone Safeguard. The only transaction that could possibly form the basis of a claim under the ICFA is the mortgage at issue in the foreclosure. There is no allegation that Borrowers engaged in any trade or commerce with Safeguard. In addition to the statutory definition of "consumer," Illinois courts have held that the ICFA does not apply to banking services but rather "protects a consumer who purchases merchandise or home improvement services for his own use." *In re Estate of Szorek*, 194 Ill. App. 3d 750, 755 (1st Dist. 1990); *Barille v. Sears Roebuck and Co.*, 289 Ill. App. 3d 171, 178 (1st Dist. 1997). The Complaint does not allege that Borrowers purchased any merchandise or home improvement services.

---

[4] The Complaint is vague with respect to which type of ICFA claim is being brought, alleging that all Defendants seemingly engaged in the same unknown "unfair and/or deceptive practices." *Counterclaim,* ¶¶ 102-119.

Even if the Court finds that the ICFA does apply, the pleading fails to meet the requisite standard. It does not include particular allegations regarding "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Gen. Elec. Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). The only allegation regarding communications references the defendants generally and offer nothing more than vague, general, baseless comments. *E.g.*, *Counterclaim* ¶ 113. Count III should be dismissed because there can be no deception absent a specific allegation of some type of communication between the parties. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134 (holding that the plaintiff's claim failed because he did not allege that he had seen, heard, been deceived by, or induced to purchase the goods in question by the defendant's allegedly deceptive statements).

Finally, Borrowers allege no formal, proper, recoverable damages. While not clearly delineated, Borrowers seem to seek damage based upon damage to the Property and because the short sale was rejected. Even assuming Safeguard made the alleged representations (which there are no allegations to suggest it did), the representations could not cause the alleged damages. *See*, *De Bouse v. Bayer AG, et al.,* 235 Ill.2d 544, 555 (2009) (lack of communication cannot form basis of ILCFA claim). Borrowers admit they were offered a deed in lieu of foreclosure. *Counterclaim*, ¶¶ 64-5. Borrowers would have received no proceeds from the short sale, and they do not allege how a short sale would have put them in a better position than a deed in lieu. In sum, Borrowers do not allege that they suffered any actual damages, and this claim must be dismissed with prejudice.

### IV. Borrowers' negligence claim fails because they allege no property damages and fail to identify any duty Safeguard owed to the Borrowers.

Borrowers allege that Safeguard negligently performed the winterization of the Property.

7

In order to plead negligence, one must allege, among other things, "facts that establish the existence of a duty." *Hills v. Bridgeview Little League Ass'n,* 195 Ill. 2d 210, 745 N.E.2d 1166, 1178 (2000). Here, no duty is alleged between the parties, nor can there be. There was no relationship between Safeguard and the Borrowers. *See*, *Jackson v. The Bank of New York*, 2012 WL 2503956, p. 3 (N.D. Ill. 2012).

Even if such a duty existed, the claim still fails because any damages the Borrowers have are barred by the economic loss doctrine, otherwise known as the *Moorman* doctrine; the Borrowers' damages arise solely out of the mortgage, a contractual relationship. *Jackson*, 2012 WL 2503956, pps. 3-4, *Wigod v. Wells Fargo Bank, NA*, 673 F.3d. 547, 567-68 (7th Cir. 2012).

Lastly, as noted above, Borrowers do not allege how the rejection of a short sale puts them in a worse position than if they were to accept the deed in lieu of foreclosure. Thus, Borrowers do not allege they actually suffered any proper damages, and consequently Count V should likewise be dismissed.

V. **No action exists under the Fair Debt Collections Practices Act because, in addition to other reasons, Safeguard is not a "debt collector."**

The FDCPA applies only to entities acting as "debt collectors." *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). The FDCPA defines a "debt collector" as follows:

> "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*15 U.S.C. § 1692a(6).* Included within the definition, for purposes of section 1692f(6), is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." *15 U.S.C. § 1692a(6).* "Creditors" are distinct from debt collectors; a creditor "offers or extends credit creating a debt

or to whom a debt is owed, whereas a debt collector is one who attempts to collect debts on behalf of another." *Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

The pleading makes conclusory allegations that Safeguard fits the definition of a debt collectors, but is devoid of any well-pled facts supporting that proposition. *Counterclaim*, ¶¶ 147-151. What's more, this Court has already held that the principal purpose of Safeguard's business is preserving property, not enforcing security interests. *Alqaq v. CitiMortgage,* 2014 WL 1689685 (N.D. Ill. 2014), *Allen v. Chase Home Finance, LLC, et al.*, 2011 WL 3882814, p. 3 (N.D. Ill. 2011). There is arguably a split in authority in this Circuit as to whether certain loan servicing activities undertaken during the mortgage foreclosure process fall within the purview of the FDCPA. *Compare, e.g., Frazier v. U.S. Bank Nat. Ass'n.*, 2013 WL 1337263 (N.D. Ill.) (holding that certain loan servicers (not a property preservation company like Safeguard) violated the FDCPA by showing a property to potential investors) *with, e.g., Gordon v. Bank of N.Y. Mellon Corp.*, 964 F.Supp. 2d 937, 948-49 (N.D. Ind. 2013) (holding that similar conduct alleged to have occurred here is not debt collection).

The more recent decisions, and those arising out of factual situations closer to the case at bar however, support the position that the FDCPA does not apply because the actions allegedly taken by Safeguard were not attempts to collect a debt and were instead to secure and preserve the property. In *Gordon*, the complaint alleged that the defendants – without a legal right to possession of the property – had entered the house, removed plaintiffs' personal property, changed the locks on the house and caused "other damage." 964 F.Supp. 2d at 940. The *Gordon* court noted that there was no allegation that any of the defendants in question made any communication, threat, or mention of any debt owed by plaintiffs. *Id.* at 949. The court considered and rejected the argument that section 1692f(6) had been violated, holding that the section presupposed that the prohibited conduct would be carried out in an attempt to collect a

9

debt. *Id.* at 950. Entering the home, removing personal belongings and/or changing the locks on a home are not "inherently associated with the collection of a debt." *Id.* at 948. A finding that section 1692f(6) applies to the types of activities alleged to have occurred in this case would extend the FDCPA beyond its intended purpose, to situations in which there was no "hint of any attempt to collect a debt." *Id.* at 950. Here, at worst Borrowers allege damage to the Property.

A somewhat similar fact pattern can be found in *Alqaq v. CitiMortgage*, a case involving Safeguard. 2014 WL 1689685 (N.D. Ill.). In *Alqaq*, the plaintiff alleged that, while he was still in possession of the property, Safeguard's subcontractor entered the home, removed certain personal possessions and changed the locks. *Id.* at *2. Alqaq claimed that these actions brought Safeguard and its subcontractor within the definition of "debt collector" because they amounted to "dispossession or disablement" of property in "enforcement of security interests." *Id.* at *3. This Court noted that federal mortgage regulations and Illinois law "impose strict duties on mortgagees to properly secure and protect foreclosed property from deterioration." *Id.* In order to comply with these obligations, mortgagees, such as BOA, contract with firms like Safeguard, who specialize in property preservation. The defendants' actions were incidental to debt collection and were not dispossession or disablement of property undertaken to enforce a security interest. *Id.* at *4. The principal purpose of Safeguard's business "is not debt collection or the enforcement of security interests, but rather securing property." *Id.* at *3. In this case, the actions complained of do not even arise to those in *Alqaq*. In both however, there is no allegation that any direct attempts to collect a debt, i.e., sending a letter or making phone calls, were made. If there was no attempt to collect a debt, Plaintiffs cannot claim that the FDCPA was violated. *Isaacson v. Saba Comm. Services Corp.*, 636 F.Supp. 2d 722, 724 (N.D. Ill. 2009).

Even if Safeguard was in fact a debt collector (which it is not), it was not collecting a debt in this instance. For example, in *Allen*, the Court held that Safeguard was "not attempting to

collect a debt…but merely following work orders…to secure the property and prevent damage." 2011 WL 3882814, p. 3; *see also*, *Gordon v. Bank of New Yorkmellon Corp., et al.*, 964 F. Supp.2d 937, 950 (N.D. Ind. 2013). Thus, even if the statute could theoretically be applicable in some instances (though Safeguard's position is that it cannot), the facts presented in the Borrowers' pleading still do not substantively allege Safeguard was doing something other than securing and preserving the property.

> **VI. No claim exists for tortious interference with contractual relations because borrowers suffered no damages and because Safeguard could not have interfered with the alleged contract.**

To establish a claim for tortious interference with a contract, one must demonstrate "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of the contract; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's conduct; and (5) damages." *O'Driscoll v. Argosy Univ.,* 2014 WL 714023 p. 3 (N.D. Ill. 2014). Borrowers' tortious interference claim fails because they do not allege a breach of the short sale contract, and consequently they do not and cannot demonstrate elements three and four. Instead, it is alleged that the short sale was "canceled." *Counterclaim*, ¶ 178.

Lastly, Borrowers' tortious interference claim fails because they cannot identify any actual, recoverable damages. As referenced above, the Subject Property is in foreclosure, and Borrowers admit they have been provided the opportunity for a deed in lieu of foreclosure. Borrowers do not allege how they were damaged by being offered a deed in lieu as opposed to a short sale. Thus, the tortious interference claim fails.

> **VII. Conclusion**

Borrowers' allegations against Safeguard do not allege sufficient factual material that raises the right to relief above the level of speculation. Safeguard had the right to issue work

orders to its independent contractors under the mortgage to enter the premises, particularly given its vacancy and abandonment, thus precluding the trespass claim. The intrusion upon seclusion claim fails for not only the same reason, but also because the Borrowers can never claim "seclusion" for a property where they did not reside, had no property, and were allowing visitors to enter. The ICFA claim equally fails for many reasons, most simply because there was no consumer relationship between Safeguard and the Borrowers. Because no duty was owed to the borrowers, the negligence claim is precluded as are any damages sought. There are no facts tending to show that Safeguard: (1) was acting as debt collector during the relevant time; (2) engaged in any deceptive practices; or (3) made any deceptive statements. The tortious interference claim is equally precluded because no allegation exists (nor can such an allegation ever exist) to suggest any "contract" was breached as a result of Safeguards acts and/or omissions. In the absence of these allegations, the claims fail as a matter of law, and the allegations against Safeguard should be dismissed with prejudice.

WHEREFORE, Defendant SAFEGUARD PROPERTIES, LLC respectfully requests that this Honorable Court dismiss the claims against it with prejudice and for all other relief deemed just and proper.

Respectfully Submitted

/s/ Kenneth A. Perry
One of the Attorneys for Defendant Safeguard

Kenneth A. Perry (ID # 6283740)
kperry@salawus.com
Peter N. Maris (ID #6306510)
pmaris@salawus.com
SmithAmundsen, LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL  60601
(312) 894-3200
(312) 894-3210 – Fax