## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Federal National Mortgage Association, | ) | |
| Plaintiff, | ) | Case No.:  14 cv 4664 |
| | ) | |
| vs. | ) | Judge Andrea R. Wood |
| | ) | |
| George L. Obradovich, et al. | ) | |
| Defendants. | ) | |

## SAFEGUARD PROPERTIES, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS DEFENDANTS/THIRD-PARTY PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

NOW COMES Third-Party Defendant, SAFEGUARD PROPERTIES, LLC (hereinafter "Safeguard"), by and through its attorneys, SmithAmundsen LLC and hereby submits this Reply in Support of its Motion to Dismiss the Third-Party Claims brought against it by Defendants/Third-Party Plaintiffs George and Jennifer Obradovich (hereinafter "Borrowers").

### Introduction

Borrowers' Response attempts to obscure the salient issues presented by this case, cites distinguishable case law and distorts the authority on point.   Throughout the Response, Borrowers conflate Safeguard and Seterus/Fannie Mae, essentially asserting that they are indistinguishable.   In reality, even assuming an agency relationship existed, Safeguard is a separate entity.  The Response also implicitly admits the factual deficiencies in the Counterclaim by repeatedly referencing materials outside the pleadings.  The simple truth is that Borrowers' Counterclaim does not plead sufficient factual material to raise their right to relief above the level of speculation.

Borrowers voluntarily dismissed their Intrusion Upon Seclusion claim, originally pled in Count II of the Counterclaim. With respect to their trespass claim, under the mortgage

agreement, Borrowers did not have the exclusive right to possess the property at the relevant times and had consented to Safeguard's presence on the property. Defendants/Third-Party Plaintiffs' ICFA claim fails because Safeguard's actions were not "unfair" within the meaning of the statute. Nor were any of the communications between Safeguard and Borrowers deceptive, or undertaken with the intent that Borrowers rely on any deception. The Response does not address the central defect in the negligence claim – that Borrowers have not alleged any facts establishing the existence of a duty owed by Safeguard to Borrowers. Borrowers' FDCPA claims fail because they have not pled any facts tending to show that the principal purpose of Safeguard's business is either debt collection or the enforcement of security interests. Finally, the tortious interference with contract count should be dismissed because Borrowers have not alleged facts showing a breach of the contract, or any facts showing that Safeguard acted intentionally to interfere with the contract. Accordingly, Safeguard is entitled to judgment in its favor as a matter of law and Borrowers' Counterclaim should be dismissed with prejudice.

## Argument

### I. Borrowers did not have the exclusive right to possess the property and therefore cannot maintain a claim for trespass

A claim for trespass requires the intentional invasion of the owner's exclusive possession of real estate that detracts from the owner's use. *Johnson v. Smith*, 878 F.Supp. 1150, 1153 (N.D. Ill. 1995). Under the terms of the mortgage, Borrowers did not have the exclusive right to possess the property. The Response disputes the definition of "abandoned" and argues that Borrowers had not abandoned the property. Even if Borrowers are correct, however, Safeguard still prevails because, based on the information available to Safeguard, Borrowers were in default at the time in question and had not performed all of the covenants and agreements contained in the mortgage. *Counterclaim* at ¶17-20.

2

Under the terms of the mortgage, the mortgagee (here Seterus and Fannie Mae) had the right to preserve and protect the property.

In relevant part, the Mortgage provides as follows:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument...then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including...securing and/or repairing the Property ••• Securing the Property includes, but is not limited to, entering the Property...[.]

*See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim).

The Eastern District of Wisconsin has held that by signing a mortgage containing identical language, the borrower impliedly consented to the mortgagee entering the property if the borrower defaults. *PNC Bank, N.A. v. Van Hoornaar*, 2014 WL 4411616 at *2 (E.D. Wis. September 5, 2014.) No trespass claim can stand when the purported owner consents to another's presence on the property. *Id.* at *9.

Borrowers failed to perform all of the agreements contained in the mortgage and Seterus/Fannie Mae had the right to enter the property. Thus, Borrowers did not have the exclusive right of possession and cannot state a claim for trespass.

## II.    The ICFA does not apply nor have Borrowers adequately pled a claim under the statute

Borrowers allege damages based on both unfair conduct and deceptive conduct. *Counterclaim*, at ¶¶ 109-112, 116. The Counterclaim also alleges that Safeguard "unfairly and deceptively" advised Borrowers to submit claims for repair. *Counterclaim*, at ¶ 116. In order to state a deceptive practices cause of action, Plaintiffs must allege with particularity the identity of the person making the misrepresentation and the content of the misrepresentation. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). Plaintiffs' allegations that unknown employees of Safeguard made certain statements concerning their claim for property damage does not satisfy

3

the required standard regarding the particular identity of the person who made the alleged misrepresentation.

The Response, without factual support in the Counterclaim, asserts that all Third-Party Defendants and Counter-Defendants deceptively induced Borrowers to stop making payments on the mortgage by promising a short sale. (Resp. at 15.) There are no facts pled, however, tending to show that Safeguard communicated with Borrowers in any way regarding the mortgage, the payments on the mortgage, or the short sale. The Counterclaim does not meet the pleading standard to state a claim against Safeguard for deceptive practices under the ICFA. To the extent their ICFA claims are based on Safeguard's alleged deception, they should be dismissed.

Borrowers claim that it was unfair for Safeguard to change the locks at the property and "intentionally" cause damage. *Counterclaim*, at ¶ 112. Borrowers also allege that it was unfair for Safeguard to lock them out of their property and force them to abandon possession. *Counterclaim* at ¶110. By the time Safeguard performed any work, however, Borrowers had already surrendered possession of the property by renting it out to tenants. They had voluntarily vacated the property long before Safeguard performed any work. *Counterclaim*, ¶¶ 3, 17-20.

Moreover, Safeguard's alleged conduct was not unfair under the standard set forth in *Siegel v. Shell Oil Company*. 612 F.3d 932, 935 (7th Cir. 2010). [1] As discussed more fully below, Safeguard's actions did not violate public policy. Indeed, there are public policy interests that encourage entities like Safeguard to secure property like that in question. *See, e.g.* 24 C.F.R. § 203.377, *infra*. Similarly, Safeguard's actions were not immoral, unethical, oppressive, or unscrupulous because, as noted above, they were undertaken pursuant to a legal right guaranteed by the mortgage. *See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim). Finally, any injury suffered

---

[1] Conduct is unfair under the ICFA if it 1) violates public policy, 2) is immoral, unethical, oppressive, or unscrupulous, and 3) substantially injures consumers. *Siegel*, 612 F.3d at 935. The third element is not met where the injury is outweighed by a countervailing benefit to consumers. *Id.*

by Borrowers was not substantial and is outweighed by the benefit all consumers enjoy by preventing at risk properties from falling into disrepair.

The *Hill v. Wells Fargo* and *Bywater v. Wells Fargo* cases upon which Borrowers rely are inapplicable to this case. In *Hill* the court inferred that the alleged actions forming the basis of the complaint were taken to avoid a potentially lengthy foreclosure process. 946 F.Supp. 2d 817, 826. The *Bywater* court noted that the alleged actions had taken place before any foreclosure case had been filed and that the defendants' actions were an effort to avoid foreclosure entirely. 2014 WL 12565103 at *5 (N.D. Ill. 2014). These cases do not apply because Safeguard has no interest whatsoever in avoiding foreclosure or decreasing the amount of time spent litigating a foreclosure case. It is just as likely as not that a lengthy foreclosure process would be, financially speaking, better for Safeguard than a shorter foreclosure. Unlike *Hill* and *Bywater*, there can be no reasonable inference that Safeguard was motivated to avoid or truncate the foreclosure process.

**III.    Borrowers' negligence claim should be dismissed because they have failed to allege any facts establishing that Safeguard owed them a duty and the claim is also barred by the *Moorman* doctrine**

The Response ignores Safeguard's argument that the Counterclaim does not allege facts establishing that Safeguard owed a duty to Borrowers. Instead, Borrowers argue that "the Fannie Mae Defendants," which they define as including Safeguard, were the creditor and servicer of the loan. (Resp. at p. 18.) To be clear, Safeguard was neither the lender nor the servicer for Borrowers' mortgage. There was no direct relationship of any kind between Safeguard and Borrowers such that Safeguard owed any duty to Borrowers. Even if Safeguard were acting as the agent of Seterus/Fannie Mae, this does not mean that it owed any duty to Borrowers. An agent is only liable to a third party when it breaches a duty owed to the third party. *Bovan v. Am.*

*Fam. Life Ins. Co.*, 386 Ill. App. 3d 933, 942 (1st Dist. 2008), citing Restatement (Third) of Agency §7.02; *Bescor, Inc. v. Chicago Title & Trust Co.*, 113 Ill. App. 3d 65, 68 (1st Dist. 1983)("[A]n agent is not liable for injuries to third persons resulting solely from a mere breach of duty which he owes to his principal, unless at the same time the agent owes a separate duty to the third party.")   The Counterclaim alleges no facts tending to establish that Safeguard owed Borrowers any duty.

As to the economic loss doctrine, and on similar facts to those here, the Seventh Circuit held that a plaintiff's tort cause of action was barred in *Catalan v. GMAC Mortgage Corporation.* 629 F.3d 676, 692-93 (7th Cir. 2011).   In *Catalan*, the plaintiffs brought negligence claims against their mortgage servicer for various alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601, *et. seq. Catalan*, 629 F.3d at 680.   The court held that the relationship between the parties had its root in the "note-and-mortgage contract" and that no extra-contractual duties could arise without some showing of a fiduciary relationship between the parties.  *Id*. at 693.   In the absence of a showing that such a relationship existed, dismissal of the negligence claim was proper.  *Id.*   Borrowers have not alleged any facts showing that any relationship at all existed between Safeguard and Borrowers.   Although *Catalan* recognizes several exceptions to the economic loss doctrine (*Id.*), the Response does not contend that the negligence claim fits any exception and Borrowers have accordingly waived any argument on this point.   Besides being binding authority, the *Catalan* decision is closer factually and procedurally to this case than any of the cases Borrowers cite.   Their negligence claim should be dismissed.

### IV.     The FDCPA does not apply because Safeguard is not a debt collector

This Court has already held that the principal purpose of Safeguard's business "is not debt collection or the enforcement of security interests, but rather securing property." *Alqaq v. CitiMortgage*, 2014 WL 1689685 at *3. This holding was made on facts identical to those alleged here. Borrowers' conclusory allegations regarding the principal purpose of Defendants' business lack particularized facts in support and are not entitled to any presumption of truth. *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012).

Although there is a split in authority in this District, *Alqaq* is closer both factually and chronologically to this case than any of those cited by Borrowers. The *Alqaq* court specifically and explicitly examined the question presented here and found that Safeguard is not a debt collector because the principal purpose of its business is not the enforcement of security interests.

According to Borrowers, *Alqaq* is factually distinguishable because the alleged wrongdoing took place after a foreclosure sale had been confirmed. (Resp. at p. 10.) This is a distinction without a difference. In *Alqaq*, Safeguard allegedly entered the plaintiff's property, changed the locks, and winterized the home, without an order of possession. 2014 WL 1689685 (N.D. Ill. 2014). The operative facts and allegations here are substantively identical. In both cases, Safeguard allegedly entered a home without an order of possession and performed certain winterization work. Based on these analogous facts, Judge Hart held that the principal purpose of Safeguard's work was not debt collection or the enforcement of security interests. *Alqaq*, 2014 WL 1689685 at *3.

Furthermore, the cases cited by Borrowers all involve allegations regarding property that the homeowner was allegedly occupying at the time. That is not the case here. Not only did

Borrowers not occupy the property, but they had leased it out for rent. *Counterclaim* at ¶18. Borrowers also cite to certain information on Safeguard's website to support their claim that it is a debt collector. (Resp. at p. 9.) Leaving aside the fact that these assertions are not pled in their Counterclaim, Borrowers make the brazen and unsupported leap of logic from Safeguard's advertising services related to "all aspects of default property management" to the conclusion that the principal purpose of Safeguard's business is debt collection. (Resp. at p. 9.) Property management, i.e., securing and maintaining property, is not the same thing as debt collection. Even if Safeguard provided debt collection services – which it does not – those services would have to be the principal purpose of its business in order for FDCPA liability to attach. Borrowers have not pled any facts supporting that proposition, and one sentence lifted from Safeguard's website does not cure this fatal flaw.

The *Simpson v. Safeguard* case does not support Borrowers' position. In that case, the court noted that Safeguard had allegedly posted notices instructing the borrower to call the mortgage servicer's loan counselors and to have their account number ready. 2013 WL 2642143 at *2-3. In this case, the only notices allegedly posted made no mention of the mortgage or any other debt. Indeed, the only notice allegedly posted indicated that certain winterization work had been performed by Safeguard, pursuant to a work order issued by Seterus and Fannie Mae. *Counterclaim* at ¶ 42. *See Allen v. Chase Home Fin. LLC*, 2011 WL 3882814, at *3 (N.D. Ill. Sept. 2, 2011)(dismissing FDCPA claim). Even assuming *Simpson* was decided correctly, which Safeguard disputes, it is factually distinguishable.

Borrowers also cite to *Matthews v. Homecoming Financial Network*, a pre-*Twombly* decision reached under the liberal notice pleading standard set forth in Rule 8. This standard requires only "fair notice of what the plaintiff's claim is and the grounds upon which it rests."

2005 WL 2387688 at *1. That is not the applicable standard of review on this Motion and *Matthews* is inapposite.

The other cases cited by Borrowers, including *Frazier v. U.S. Bank* (2013 WL 1337263) and *Flippin v. Aurora Bank* (2012 WL 3260449) were decided before *Alqaq*. What's more, neither *Frazier* nor *Flippin* directly examined the "principal purpose" issue presented here. The more recent case law cited in Safeguard's Memorandum of Law in Support of its Motion to Dismiss and this Reply directly address whether the principal purpose of Safeguard's business is debt collection and/or the enforcement of security interests. On essentially identical facts as those presented here, multiple judges in this District found that Safeguard's principal purpose was not debt collection or the enforcement of security interests. *See e.g., Alqaq, supra, Deegan v. Safeguard Properties, LLC*, 13 C 4840, September 23, 2013 transcript of proceedings before the Hon. Milton Shadur (dismissing the Plaintiffs' FDCPA claim because the principal purpose of Safeguard's business is not debt collection. "[Safeguard's] principal activity is a different kind of function. They do not...collect the debts of another in any meaningful sense." p. 6:1-5.)

Given the conflicting authority on this point and the recent uptick in foreclosure proceedings caused by the global financial crisis, the policy implications of judicial decisions in this area should be evaluated. The State of Illinois, and indeed every community that comprises it, have a vested interest in ensuring that at-risk properties do not fall into disrepair. *See, e.g.* 24 C.F.R. § 203.377 (mandating that in certain cases, foreclosed-upon properties be protected and preserved by the mortgagee); 720 ILCS 5/21-3(e-5) (1)-(3). Imposing FDCPA liability for actions akin to those alleged to have occurred here will discourage Fannie Mae, Seterus, Safeguard, and all other mortgagees and property preservation entities from working to preserve all foreclosed properties and increase the chances that those properties engender the types of

harms Congress and the Illinois legislature have sought to avoid. Moreover, doing so would extend the FDCPA beyond its intended purpose to situations where there was no attempt to collect a debt. *Gordon v. Bank of N.Y. Mellon Corp.*, 964 F.Supp. 2d 937, 950 (N.D. Ind. 2013).

## V.     Borrowers' Tortious Interference With Contract claim cannot stand because they have alleged no facts establishing the required elements

The Counterclaim does not contain any well-pled facts tending to show that contract was breached, that Safeguard acted intentionally, or that Safeguard knew of the short sale contract. Borrowers make conclusory allegations that Safeguard had knowledge of the short sale (*Counterclaim* at ¶ 177) and that Safeguard acted intentionally to damage the property. *Counterclaim* at ¶ 178. These allegations are unsupported by any facts tending to prove their truth, however, and are not entitled to a presumption of truth. *Munson, supra.*

Furthermore, the Counterclaim does not allege that the short sale contract was breached, only that it was rendered void and "cancelled." *Counterclaim* at ¶¶ 179, 181. The short sale contract itself provided for the cancellation of the contract under certain circumstances, including "defects disclosed by an inspection." (See the short sale contract, attached as Exhibit B to the Counterclaim, at ¶10.) There is no factual allegation that the short sale buyers breached the contract. Rather, the allegations are that the contract was "cancelled." *Counterclaim* at ¶¶ 181, 182. Another reasonable inference that can be drawn from the Counterclaim is that the parties agreed that the original short sale contract was void and began negotiating a new contract at a reduced purchase price. *Counterclaim* at ¶¶ 34, 49-50, 54, 57. In either event the contract was not breached.

Even if the contract was breached, the claim should still be dismissed because there are no factual allegations establishing when or how Safeguard received notice of the contract. Similarly, Borrowers have failed to plead any facts showing that Safeguard acted intentionally to

induce a breach. Finally, the Response argues that Borrowers have been damaged by the cancellation of the short sale contract, despite the fact that no such allegations appear in the Counterclaim.

Borrowers have not adequately pled a claim for tortious interference with contract and this count should be dismissed.

### Conclusion

Borrowers' Counterclaim has failed to state a cause of action upon which relief can be granted and should be dismissed. By signing the mortgage, Borrowers consented to the presence of the mortgagee and/or its agents on the property in the event of default. At a minimum, Borrowers agreed that the mortgagee had the right to enter the property in the event of default. Because they defaulted in September, 2013, they did not have the exclusive right to possess the property at the relevant times and cannot state a claim for trespass.

None of the actions undertaken by Safeguard were unfair within the meaning of the ICFA and none of the statements allegedly made by Safeguard are actionable under that statute. Borrowers have failed to allege any facts showing how any statements made by Safeguard were deceptive, or any intent on Safeguard's part that Borrowers rely on the alleged deception.

Borrowers' FDCPA claim fails because, as has already been held by several judges in this District, the principal purpose of Safeguard's business is not debt collection or the enforcement of security interests.

The Counterclaim is devoid of facts showing that Safeguard owed a duty to Borrowers, dooming their negligence claim. The negligence claim is also barred by the economic loss doctrine. The tortious interference with contract claim fails because the Counterclaim does not allege that the short sale contract was breached. Furthermore, there are no facts supporting

Borrowers' conclusions that Safeguard knew of the contract, or that it acted intentionally to induce a breach of the contract. For the reasons stated above, as well as in Safeguard's Memorandum in Support of its Motion to Dismiss, Borrowers' Counterclaim should be dismissed with prejudice.

WHEREFORE, the Third-Party Defendant, SAFEGUARD PROPERTIES, LLC respectfully requests that this Honorable Court Dismiss Defendants/Third-Party Plaintiffs' Counterclaim with prejudice and for all other relief deemed just and proper.

Respectfully Submitted

/s/ Peter N. Maris
One of the Attorneys for Third-Party Defendant
Safeguard Properties, LLC

Kenneth A. Perry (ID # 6283740)
kperry@salawus.com
Peter N. Maris (ID #6306510)
pmaris@salawus.com
SmithAmundsen, LLC
150 N. Michigan Ave., Suite 3300
Chicago, IL 60601
(312) 894-3200
(312) 894-3210 – Fax

1
2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

3       DANIEL DEEGAN, et al.,              )   No. 13 C 4840
                                           )
4                          Plaintiffs,     )   Chicago, Illinois
                                           )   September 13, 2013
5                                          )   8:45 o'clock a.m.
        -vs-                               )
6                                          )
        SAFEGUARD PROPERTIES, LLC,         )
7                                          )
                           Defendants.     )
8

9              TRANSCRIPT OF PROCEEDINGS - MOTION
            BEFORE THE HONORABLE MILTON I. SHADUR
10

APPEARANCES:
11

12      For the Plaintiffs:     MR. MARK A. BULGARELLI
                                PROGRESSIVE LAW GROUP LLC
                                One North LaSalle Street
13                              Suite 2255
                                Chicago, Illinois 60602
14

15      For the Defendant:      MR. SHOMSHON MOSKOWITZ
                                TRIBLER ORPETT & MEYER P.C.
16                              225 West Washington Avenue
                                Suite 1300
17                              Chicago, Illinois 60606

18

19

20

21

22

23      Court Reporter:         ROSEMARY SCARPELLI
                                219 South Dearborn Street
24                              Room 2304A
                                Chicago, Illinois  60604
25                              (312) 435-5815

1              THE CLERK:  13 C 4840, Deegan versus Safeguard

2     Properties.

3              MR. MOSKOWITZ:  Good morning, your Honor, Shomshon

4     Moskowitz on behalf of Safeguard Properties.

5              MR. BULGARELLI:  Good morning, your Honor, Mark

6     Bulgarelli on behalf of plaintiff.

7              THE COURT:  Good morning.

8              MR. MOSKOWITZ:  Good morning.

9              THE COURT:  Why don't you both sit down because I

10    want to comment on the stuff that I have gotten and then hear

11    from you.  Okay?

12             MR. MOSKOWITZ:  Okay.

13             MR. BULGARELLI:  Thank you.

14             THE COURT:  You can sit up close here.  You don't

15    have to go all the way back there.

16             The first thing I want to say, I know that I am --

17    I have -- or at least I have expressed -- maybe I don't have

18    more concern about this than my colleagues -- but, you know,

19    we are taught regularly by the Court of Appeals and quite

20    properly that we district judges do not make precedents.  You

21    know, what we say is ours; and to the extent that our

22    colleagues do or do not disagree or agree, that is a function

23    of what their views are, not of a colleague, but of the

24    reasoning of what is involved.  So it is -- to me it is,

25    frankly, very annoying to get a paper that says throughout

1    "this District Court" or "this Court has held," when it is an

2    opinion of Ginny Kendall or Gary Feinerman and not mine.

3          If you have read any of my opinions, you know that

4    because I am allergic to using the first person singular in

5    an opinion, I somehow have a feeling that that is -- I don't

6    know what to characterize it, but I have not.  And so I

7    always say "this Court," which is a euphemism.  And of course

8    it gets awkward when I was talking about when I was in

9    practice and I say "when this Court was in practice."

10         But I get these references to Judge Kendall's

11   opinion, Judge Feinerman's opinion.  And the question is, do

12   I find them persuasive?  Well, short answer is I do.  There

13   is no predicate here, no proper predicate, for holding

14   Safeguard Properties as a debt collector.  It is just not

15   there.  The thing that they do, although maybe it could

16   create pressure toward the payment of a debt, which is not

17   their direct activity or direct purpose, but if so -- even if

18   so, it would be purely incidental to what their real

19   activities are.  And accordingly what that means is that

20   certainly Count Two is -- has to be dismissed.  It just

21   doesn't state a viable claim.

22         Now, what that then triggers, although nobody

23   talked about it, is that we don't have subject matter

24   jurisdiction here.  Why?  Because what are named here, in

25   addition to Safeguard Properties, are a number of Doe

1    defendants.  And the -- and history tells us -- I think the

2    first opinion I wrote about this was probably 1985 in a case

3    called John Hancock in which it was an action in which there

4    were unnamed real defendants, but unnamed, and therefore they

5    were referred to as Does.  And of course we don't know the

6    citizenship of a Doe defendant.

7         And, moreover, the strong likelihood is that even

8    though Safeguard Properties may be a foreign corporation, the

9    Doe defendants who actually do the groundwork here in

10   Illinois are most likely Illinois citizens.

11        So the net result is that this lawsuit goes away

12   because there is no -- with the federal question claim having

13   been dismissed, as it must be, the other two claims which are

14   under Illinois law and therefore have to rely on diversity of

15   citizenship fail for lack of subject matter jurisdiction.

16        So bottom line is, one, I grant the motion to

17   dismiss Count Two and, two, I dismiss the action for lack of

18   subject matter jurisdiction.  And that of course moots the

19   other motion which is to strike the class allegations because

20   you have got to have jurisdiction before you can go on to see

21   whether Deegan is able to represent the class and whether a

22   class is appropriate.

23        So although it is nice to see both of you, this is

24   the last time.  So you tell me what the problem is with that.

25        MR. BULGARELLI:  Your Honor, first of all, we of

1   course -- these motions were just filed several days ago --

2           THE COURT:  I know that.

3           MR. BULGARELLI:  -- have not had any chance to

4   brief them or set a briefing schedule.

5           THE COURT:  I know, but I have.

6           MR. BULGARELLI:  With all due respect, your Honor,

7   regarding the cases that they cite, there is equally

8   persuasive by your colleagues here in this Court that says

9   the complete opposite.  In particular I point to the Boyd

10  decision.  I personally have another decision entered by

11  Judge St. Eve in the case of Frazier.  These -- the

12  activities of Safeguard have been deemed in numerous court

13  actions to be held to be the activities of a debt collector

14  because the FDCPA does not just hold in regards to people who

15  are actually collecting debt but also people who are

16  enforcing security interests.

17          And what happens here, Safeguard is a property

18  security company that goes in on behalf of the banks for the

19  purpose of enforcing their security interest.

20          THE COURT:  I have -- I have seen those cases, and

21  I have thought about those as well.  But again I -- and I

22  recognize -- and I tried to indicate that it may be that the

23  activities that they engage in may facilitate debt collection

24  because -- for example, because it creates pressure on the

25  debtor to honor the debt in order to avoid the unpleasantness

1    of having Safeguard come in and do its thing.  But you see

2    once again the fact remains that their principal activity is

3    not that of debt collection.  Their principal activity is a

4    different kind of function.  They do not act -- collect the

5    debts of another in that meaningful sense.

6           So I recognize and I respect your point, but you

7    see that is -- that is the reason that I started out by

8    talking about the fact that I find fault with their saying

9    what this Court has done because that is not true.  What has

10   happened is that this issue has been dealt with in a number

11   of opinions.  I am familiar with them.  And I recognize the

12   point.

13          But it happens I agree particularly with I thought

14   the very thoughtful opinion by Gary Feinerman.  But that is

15   my view as well, that we are really not talking about

16   somebody who is a debt collector in the meaningful sense that

17   the statute deals with.

18          MR. BULGARELLI:  And, your Honor, I -- I obviously

19   understand the -- what you are stating there.  But what the

20   statute -- I think there is a distinction.  There is a matter

21   of their principal purpose is to collect debts.  That

22   triggers the FDCPA.  But it has also been ruled specifically

23   completely separate.  They don't have to do any business of

24   actually collecting the debt --

25          THE COURT:  I know that.

1        MR. BULGARELLI:  -- to be triggered under the --

2        THE COURT:  But that is what I -- that is what I

3   have just covered, that is, you are quite right that they

4   don't have to be in there sticking their hand out and saying,

5   "Pay."  That is not the point.  The point is, what is their

6   principal activity?  Their principal activity, although it

7   may have that as a collateral -- even a collateral impact or

8   a collateral purpose, which is some question, but I will

9   grant that for the moment, the fact remains it is not their

10   principal purpose.  It is not their -- anybody who looks at

11   the thing and is thinking about the English language in its

12   ordinary meaning would not characterize Safeguard Properties

13   as a debt collector.

14        MR. BULGARELLI:  And, your Honor, I believe though

15   -- and pardon me because I don't have the standard here and

16   it may be direct in plaintiff's pleading, but the FDCPA

17   standard says that the principal purpose is the collection of

18   debt but does not require the principal purpose requirement

19   for the enforcing of the security interest.  And that is the

20   fine distinction in regards to this.

21        THE COURT:  I am sorry, that doesn't fly.  You

22   know, I have dealt, regrettably, because we get such a

23   proliferation of these -- I have had the -- I can't tell you

24   how many cases I have had that involve the Federal Debt

25   Collection statute, many of them in -- most of them in

1    different contexts from this one.  Most of them are -- come

2    to the issue of things that may be closer to the line.  And I

3    recognize that there is no -- there is no totally bright line

4    distinction.

5            But the point is that if you think about the real

6    world aspect of this, this thing clearly falls on the other

7    side of whatever line there is, even though the particular

8    line may be amorphus, not in this situation.  I just don't

9    find it persuasive to characterize Safeguard Properties which

10   is engaged in a different kind of enforcement.  And as I

11   started out by telling you, I recognize that people, in order

12   to avoid the kind of unpleasantness that is involved in let's

13   say invasion of property and shutting things down and so on,

14   are then much more likely to try to get their debts paid.  I

15   understand that.

16           But that is not the test.  It is really not the

17   test.  Because if that were the case, then almost anybody who

18   is somehow collaterally involved in the process but really

19   doesn't do anything about collecting the debt would be

20   subject to a statute that was not drafted to cover them.  And

21   that is the problem that I see existing here.

22           So that is my -- that is my take on it.  And as I

23   say, I understand and I respect the opinions of some of my

24   colleagues who in whatever situations are presented before

25   them may come to a different view, but I don't.

1          So that is my -- that is my answer.  I grant the

2     motion to dismiss Count Two.  I then dismiss the action

3     itself for lack of subject matter jurisdiction because the --

4     of the absence of diversity.  And the other motion that was

5     tendered, which is the motion to strike class allegations, is

6     obviously denied simply on mootness grounds.

7          MR. BULGARELLI:  And, your Honor, with all due

8     respect I would ask that we at least have an opportunity to

9     brief this matter before you make those rulings, as I do

10    these cases often, and to be blunt this is -- would be the

11    first time I have had an issue with somebody deeming that

12    they do not qualify under the FDCPA.  And so --

13         THE COURT:  That is the first time you have had it?

14         MR. BULGARELLI:  Well, we argue it, but --

15         THE COURT:  The others --

16         MR. BULGARELLI:  I haven't lost it.  I haven't lost

17    it.

18         THE COURT:  Others have had it.

19         MR. BULGARELLI:  And there are specifics.  Some of

20    the cases pointed out only deal with certain aspects of

21    certain provisions of certain law, not the unfair aspect of

22    it.  I would just ask that we have an opportunity to show you

23    the authority.

24         THE COURT:  I don't know how to be more plain.  You

25    may not have had a chance to look, but I have.  And I have it

1   against a backdrop of having dealt with the issue.  So, you

2   know, for a lawyer to file a memorandum that cites cases and

3   causes me to read cases that that lawyer has done when I have

4   actually dealt with it to begin with doesn't advance the

5   ball.  It really does not add to the corpus juris.  And --

6   well, I have said my say.

7            Okay.  Thank you.

8            MR. BULGARELLI:  Thank you, your Honor.

9            MR. MOSKOWITZ:  Thank you, your Honor.

10       (Which were all the proceedings heard.)

11                   CERTIFICATE

12       I certify that the foregoing is a correct transcript

13   from the record of proceedings in the above-entitled matter.

14

15   s/Rosemary Scarpelli/          Date:  November 7. 2013

16

17

18

19

20

21

22

23

24

25