UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> GEORGE L. OBRADOVICH, et al., <br><br> Defendants. <br><br> GEORGE L. OBRADOVICH and JENNIFER M. OBRADOVICH; <br><br> Counter/Third-Party Plaintiffs, <br><br> v. <br><br> FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), et al., <br><br> Counter/Third-Party Defendants. | Case No. 1:14-cv-4664 <br><br> Judge: Hon. Andrea R. Wood <br><br> Magistrate: Hon. Sidney I. Schenkier |

**FANNIE MAE AND SETERUS'S REPLY
IN SUPPORT OF THEIR MOTION TO DISMISS**

Counter/Third-Party Defendants Federal National Mortgage Association ("Fannie Mae") and Seterus, Inc. ("Seterus") (collectively, the "Fannie Mae Defendants"), by their attorneys, submit this Reply in Support of their Motion to Dismiss the Counterclaims and Third Party Claims ("Counterclaim") of George and Jennifer Obradovich ("Borrowers") pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

I.   **Borrowers' Supposed Trespass Claim Fails.**

As explained in their Motion to Dismiss, the Fannie Mae Defendants cannot be liable for trespass because they had a legal right to enter upon the Subject Property under the terms of the Mortgage to protect their security interests. In their Response, Borrowers argue that the plain language of the Mortgage should be ignored, and that a court order was required to enter the Subject Property. *See* Response, pp. 16-17. Borrowers are mistaken.

This same issue was recently addressed in *Cocroft v. HSBC Bank USA, N.A.*, No. 10 C 3408, 2014 U.S. Dist. LEXIS 22680 (N.D. Ill. Feb. 24, 2014). In *Cocroft*, the court considered whether a borrower could assert a viable trespass claim where a mortgage authorized the defendant-mortgagee to enter upon a property, secure the property, and winterize the property. The *Cocroft* court determined that the defendant-mortgagee had interfered with the plaintiff-borrower's possession but still granted summary judgment on the plaintiff-borrower's trespass claim because the interference was authorized. The *Cocroft* court explained:

> No reasonable fact finder could conclude, however, that the interference was wrongful. As defendants argue, the **[plaintiff-borrowers] consented to this sort of entry by the mortgagee in the mortgage instrument itself**. Specifically, paragraph 9 of the mortgage, entitled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument," stated that if the borrowers failed to perform their obligations under the mortgage—which included making payments on the note when due—the lender was entitled to do "whatever is reasonable or appropriate to protect [its] interest in the Property" and rights under the mortgage, "including . . . securing and/or repairing the Property," a term defined to "include[ ] entering the Property to make repairs, change locks, replace or board up doors and windows," and the like. **This express consent on the part of the [plaintiff-borrowers] is sufficient to defeat a contention that the entry was wrongful**. *Id.* (internal citations omitted) (emphasis added).

*Cocroft*, 2014 U.S. Dist. LEXIS 22680, *24.

Borrowers argue that the Fannie Mae Defendants supposedly did not have the right to access the Subject Property because supposedly it was not actually abandoned, and they were

2

entitled to possession of the Subject Property until it was transferred via court order under the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101, et seq. ("IMFL"). *See* Response, pp. 16-17. However, Borrowers ignore the plain language of their Mortgage.

Like the mortgage in *Cocroft*, the Mortgage here states:

> **If (a) Borrower fails to perform the covenants and agreements** contained in this Security Instrument, … **or (c) Borrower has abandoned the Property**, then **Lender may** do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and **securing and/or repairing the Property** … **Securing the Property includes, but is not limited to,** entering the Property to make repairs, **change locks,** replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

*See* Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim) (emphasis added).

Borrowers focus solely on their argument that the property was not abandoned, and ignore that they also failed to perform the covenants and agreements contained in the Mortgage by defaulting on their mortgage loan in September 2013. *See* Counterclaim, ¶¶ 3, 17. In any event, since at least September 2013, the Subject Property was abandoned, as the Borrowers resided in Florida and their tenants had been evicted. *Id.*, ¶¶ 17-20.

Thus, just like the defendant in *Cocroft*, the Fannie Mae Defendants had the right to enter and winterize the Subject Property under the terms of the Mortgage, and Borrowers' purported trespass claim fails.

Borrowers cite a number of cases for the proposition that his trespass claim should survive the Motion to Dismiss. *See* Response, p. 17. However, in all but one of the cases cited by the Borrowers the issue of whether the purportedly trespassing party was permitted to enter the property under the terms of the mortgage was not addressed by the court. *See Hodges v. US Bank Home Mortgage, et al*, No. 10 C 5928, 2011 U.S. Dist. LEXIS 5732, *5 (N.D. Ill. Jan. 20,

2011); *Frazier v. US Bank, N.A.*, No. 11 C 8775, 2013 U.S. Dist. LEXIS 45330 (N.D. Ill. Mar. 29, 2013); *Matthews v. Homecoming Financial Network*, No. 03 C 3115, 2005 U.S. Dist. LEXIS 21535 (N.D. Ill. Sept. 26, 2005); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817 (N.D. Ill. 2013); *Jackson v. The Bank of New York*, No. 11-cv-6410, 2014 U.S. Dist. LEXIS 107939 (N.D. Ill. Aug. 6, 2014).

In fact, in *Jackson*, the court expressly noted that the argument was waived by the defendant. *See Jackson*, 2014 U.S. Dist. LEXIS 107939, *24, fn 4. In *Hill*, the trespass claim was not even subject to the defendant's motion to dismiss, and therefore was not analyzed by the court. *See Hill*, 946 F. Supp. 2d at 819-20.

In the one case that did address the defendant's argument that it was permitted to enter the property under the terms of the mortgage, the court held that the defendant did not have authorization because the complaint clearly alleged that the property was occupied and well-maintained. *See Flippin v. Aurora Bank, FSB*, No. 12 C 1996, 2012 U.S. Dist. LEXIS 111250, *6 (N.D. Ill. Aug. 8, 2012). Here, Borrowers concede they were not living in the Subject Property, and that they stopped making payments on their mortgage loan. *See* Counterclaim, ¶¶ 17-19.

Thus, like the defendant in *Cocroft*, and unlike the defendant in *Flippin*, the Fannie Mae Defendants were permitted under the terms of the Mortgage to enter and winterize the Subject Property. Accordingly, Borrowers' purported trespass claim fails, and should be dismissed with prejudice.

**II. Borrowers' Supposed ICFA Claim Fails.**

Borrowers' purported claim under the ICFA fails because Borrowers do not allege that the Fannie Mae Defendants engaged in any deceptive or unfair acts or promises with the intent that

the Borrowers rely on the deceptive or unfair practice, and that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce, as required.

Initially, Borrowers argue that allegations of "unfair conduct" do not require a heightened pleading standard. *See* Response, pp. 12-14. However, simply adding the words "unfair" to allegations based primarily on misrepresentations is not sufficient to avoid the heightened pleading standard. *See, e.g., Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F. 3d 732, 737 (7th Cir. 2014)

Here, the majority of the allegations relate to supposedly deceptive statements and the only supposedly "unfair conduct" alleged was entering the Subject Property and winterizing it. *See* Counterclaim, ¶¶ 109-110. As explained in the Motion to Dismiss and above, the Fannie Mae Defendants are expressly permitted under the terms of the Mortgage to enter the property and winterize it. *See, e.g., Cocroft v. HSBC Bank USA, N.A.*, No. 10 C 3408, 2014 U.S. Dist. LEXIS 22680, *24 (N.D. Ill. Feb. 24, 2014); Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim). Accordingly, these allegations cannot form the basis of the Borrowers' purported ICFA claim.

With respect to their deception allegations, Borrowers do not dispute that the heightened pleading standard applies. *See* Response, pp. 14-15. As explained in the Motion to Dismiss, Borrowers fail to meet this standard. In their Response, Borrowers assert that "[a]ll Defendants committed deceptive acts by inducing [Borrowers] to stop making payments by promising a short sale that Defendants unilaterally frustrated." *See* Response, p. 15 (citing ¶¶ 45-68 of Counterclaim).

However, Borrowers defaulted on the Subject Loan and listed the property for short sale in September 2013, long before the purported misrepresentations took place. *See* Counterclaim, ¶¶ 17, 20. Moreover, Borrowers do not address their failure to allege who said what, what was

said, and when it was said, as required. *See, e.g., Camasta*, 761 F. 3d at 738. For this reason also, their purported ICFA claim fails.

Additionally, Borrowers fail to allege they suffered any actual damages, as required. In the allegations specifically related to their purported ICFA claim, the Borrowers do not make any allegations related to actual damages. *See* Counterclaim, ¶¶ 103-119. In their general allegations, Borrowers merely allege that they "suffered extreme emotional distress, an increase in stress, loss of time, physical sickness and injury, loss of credit worthiness, denial of credit, imminent loss of the subject property to foreclosure, liability for any deficiency from a foreclosure, increased costs to insure the subject property, and attorney fees and costs to defend the foreclosure and assert related claims." *See* Counterclaim, ¶ 72.

As the Fannie Mae Defendants explained in their Motion to Dismiss, any alleged misrepresentations could not form the basis of a claim, because Borrowers were in foreclosure at the time the statements were made. Moreover, the rejected short sale cannot form the basis of any claim, because Borrowers were offered and rejected a deed in lieu of foreclosure, which would have prevented a foreclosure action.

Thus, Borrowers did not allege any actual damages, and their purported ICFA claim fails.

Apparently recognizing these deficiencies in their pleading, Borrowers allege for the first time in their Response that the deed in lieu was an "illusory" offer, and that it somehow would have caused a greater tax burden to the Borrowers. *See* Response, pp. 15-16.

Initially, these allegations are not included in the Counterclaim, and cannot be considered for purposes of the Motion to Dismiss. *See, e.g., Neil v. Kovitz Shifrin Nesbit*, No. 13-cv-03809, 2014 U.S. Dist. LEXIS 136696, *14 (N.D. Ill. 2014) ("[A] plaintiff may not amend her complaint through arguments in a response brief and a court's determination of a motion to

dismiss should be limited to the pleadings.").

Moreover, Borrowers' mere conjecture that a deed in lieu could have resulted in increased tax obligations is insufficient to demonstrate actual damages. *See, e.g., Camasta*, 761 F. 3d at 739-740; *Petty v. Chrysler Corp.*, 343 Ill. App. 3d 815, 823, 799 N.E.2d 432 (1st Dist. 2003) (holding that ICFA "damages may not be predicated on mere speculation, hypothesis, conjecture or whim.")

Further, mental and emotional damages alone cannot support a claim under the ICFA. *See, e.g., Morris v. Harvey Cycle and Camper, Inc.*, 392 Ill. App. 3d 399, 402, 911 N.E.2d 1049, 1053, (2009) ("ICFA 'provides remedies for purely economic injuries' and a plaintiff who alleges 'only emotional damages' cannot make a successful claim."). *Accord, Worix v. MedAssets, Inc.*, 869 F. Supp. 2d 893, 900 (N.D. Ill. 2012).

For all these reasons, Borrowers fail to allege a valid claim under the ICFA. Accordingly, Borrowers' purported ICFA claim should be dismissed with prejudice.

**III.   Borrower's Supposed Breach of Contract Claim Fails.**

As explained in the Motion to Dismiss, Borrowers' breach of contract claim fails because the clear terms of the Subject Mortgage provide that Fannie Mae had the right, but had no duty, to winterize the property. In addition, the Fannie Mae Defendants had the right, but not the duty, to obtain force-placed homeowners' insurance for the Subject Property.

In their Response, Borrowers ignore the arguments regarding the insurance, and assert only that the Fannie Mae Defendants were not permitted to enter the Subject Property because it supposedly was not abandoned, and that since they did enter the property they were required to drain water from the pipes. *See* Response, ¶ 19.

As referenced above and in the Motion to Dismiss, the Fannie Mae Defendants were

7

authorized to secure the Subject Property under the plain language of the Mortgage. *See, e.g., Cocroft v. HSBC Bank USA, N.A., et al.*, No. 10 C 3408, U.S. Dist. LEXIS 22680, *24 (N.D. Ill. February 24, 2014); Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim).

Borrowers' purported breach of contract claim fails for this reason alone.

Additionally, Borrowers again ignore that they suffered no actual damages. As discussed above and in the Motion to Dismiss, Borrowers allege the damage to the Subject Property caused the rejection of a short sale. However, Borrowers concede they were subsequently offered a deed in lieu of foreclosure, and they do not allege how a deed in lieu puts them in a worse position than they would have been in had the short sale been approved.

Moreover, their efforts elsewhere in the brief to argue that the deed in lieu would have put them in a worse situation for tax purposes fails because "a plaintiff may not amend her complaint through arguments in a response brief and a court's determination of a motion to dismiss should be limited to the pleadings." *Neil v. Kovitz Shifrin Nesbit*, No. 13-cv-03809, 2014 U.S. Dist. LEXIS 136696, *14 (N.D. Ill. 2014).

In any event, any supposed lost tax benefits are speculative and cannot form the basis of Borrowers' purported damages for a breach of contract claim. *See, e.g., Bowman v. Zimny*, 256 Ill. App. 3d 386, 390, 628 N.E.2d 384 (1st Dist. 1993) ("Damages, however, cannot be based upon mere speculation or conjecture.").

For all these reasons, Borrowers' purported breach of contract claim fails, and should be dismissed with prejudice.

**IV.  Borrower's Supposed Negligence Claim Fails.**

Borrowers' negligence claim fails because they do not allege they suffered any actual damages proximately caused by the Fannie Mae Defendants.

Borrowers do not even address this argument in their Response, and instead primarily recite the elements of a negligence claim and explain why the economic loss doctrine does not apply. *See* Response, pp. 18-19.

Borrowers also argue that they "alleged disposition of property, and gross damage to real property based on a failure to abide by a duty of care" (Response, p. 19), but do not explain how the purported damage to the Subject Property actually caused them damages, when the Fannie Mae Defendants offered them a deed in lieu of foreclosure, which would have put them in the same position had there been a short sale.

Moreover, emotional damages are not available in an action for negligence absent a related physical injury. *See Nelson v. Harrah's Entertainment Inc.*, No. 07 C 7227, 2008 U.S. Dist. LEXIS 46524, *5 (N.D. Ill. June 13, 2008) ("Illinois follows the 'impact rule' as a limitation on recovery for alleged direct victim of negligent infliction of emotional distress . . . Under the impact rule, a plaintiff only may recover for negligent infliction of emotional distress if the distress is 'directly and causally related to a physical injury.'").

Because Borrowers do not allege they suffered any actual damages, their purported negligence claim fails, and should be dismissed with prejudice.

V.  **Borrower's Supposed FDCPA Claim Fails.**

Borrowers' FDCPA allegations against Seterus fail, because under the Subject Mortgage Seterus was authorized to enter the Subject Property, to secure the Subject Property, and to winterize the Subject Property on behalf of Fannie Mae. Seterus was also authorized to pass-along the cost of securing and winterizing the Subject Property to Borrowers.

Borrowers ignore the fact that the alleged wrongful conduct of Seterus was permitted on under the terms of the Mortgage, and instead focus on their argument that, based on the rulings

9

of certain courts, property preservation companies can be considered debt collectors under the FDCPA. *See* Response, pp. 12. Borrowers also wrongly argue that they "alleged violations of the FDCPA for fees not authorized by the contract or by law," and that "[n]either party addressees this claim." See Response, pp. 6-7.

Borrowers are mistaken. In their Motion to Dismiss, Seterus acknowledges that Borrowers allege Seterus violated the FDCPA by supposedly reporting and/or assessing fees were not authorized by the mortgage contract or the law. *See* Motion to Dismiss, p. 13; Counterclaim, ¶ 172-74.

Seterus then explains that Borrowers' allegations fail, because the Subject Mortgage expressly provides that these costs may be passed along to Borrowers by increasing the principal amount due under the Note. *Id.*; Mortgage, p. 6, ¶ 9 (Ex. A to Counterclaim) ("Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument."). Borrowers do not address this argument in their Response.

Borrowers' reliance on the opinions of certain courts that property preservation companies can be debt collectors also does not support their purported FDCPA claim, because the alleged conduct was permitted under the Mortgage, and was not debt collection activity.

In a recent and well-reasoned opinion, the court acknowledged some disagreement among the courts, and then concluded that winterizing a property does not constitute debt collection activity, and therefore cannot form the basis of an FDCPA claim. *See Alqaq v. CitiMortgage, Inc.*, No. 13 C 5130, 2014 U.S. Dist. LEXIS 59366, *11 (N.D. Ill. April 29, 2014).

In *Alqaq*, defendant-borrowers alleged that "despite the home being locked and secured, [plaintiff-lender] broke into the house and 'winterized' the property, stealing personal possessions." *Id.*, *5. Thereafter, a state foreclosure court entered an order providing that: "1)

[the defendant-borrower] shall remain in possession … until November 29, 2012.  2) [Plaintiff-lender] & its agents shall not enter the subject premises until after November 29, 2012." *Id.*, *6. On November 2, 2012, defendant allegedly again "broke into the house to 'winterize' the property." *Id.*

In determining whether the defendant violated the FDCPA, the *Alqaq* court noted that federal, state, and municipal laws "impose strict duties on mortgagees to properly secure and protect foreclosed property from deterioration . . . mortgagees employ firms who specialize in property management to perform the action required.  **The 'principal purpose' of such businesses is not debt collection or the enforcement of security interests, but rather securing property**." *Id.*, *9 (emphasis added).

The *Alqaq* court then explored the split of decisions within the Northern District of Illinois regarding the question of whether securing and winterizing property constitutes debt collection activity.  The *Alqaq* court observed:

> The issue of whether entities engaged in property protection related to foreclosures, such as Safeguard and A&D, are debt collectors within the meaning of the FDCPA or entities whose conduct violates the FDCPA has divided district courts. Compare *Allen v. Chase Home Fin. LLC*, 2011 U.S. Dist. LEXIS 99359, 2011 WL 3882814 *3 (N.D. Ill. Sept. 2, 2011) (not debt collectors because mortgage not in default when alleged misconduct occurred); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 822-23(N.D. Ill. 2013) (defendants conceded they were debt collectors, but FDCPA claim dismissed because unauthorized entry did not constitute dispossessing of property falling within the purview of § 1692f(6)(A)); *Gordon v. Bank of N.Y. Mellon Corp.*, 964 F. Supp. 2d 937, 948-49 (N.D. Ind. 2013) (securing and winterizing home was not act of debt collection); and *Deegan v. Safeguard Props., LLC*, 13 C 4840, Tr. at 3, 5-8 (N.D. Ill. Sept. 13, 2013) (Docket Entries 19-20) (not debt collectors because collecting debt is only a collateral consequence of their activity, not their principal activity), with *Matthews v. Homecoming Fin. Network*, 2005 U.S. Dist. LEXIS 21535, 2005 WL 2387688 *4 (N.D. Ill Sept. 26, 2005) (debt collection activity under § 1692f(6)(A)); *Flippin v. Aurora Bank, FSB*, 2012 U.S. Dist. LEXIS 111250, 2012 WL 3260449 *2 (N.D. Ill. Aug. 8, 2012) (violation of FDCPA adequately alleged); *Frazier*, 2013 U.S. Dist. LEXIS 45330, 2013 WL 1337263 at *10 (violation based on § 1692f(6)(A) adequately alleged); and *Bywater*, 2014

11

> U.S. Dist. LEXIS 37925, 2014 WL 1256103 at *5-6 (debt collection activity under §1692f(6)(A)). *See also Glazer v. Chase Home Fin. LLC, 2010 U.S. Dist. LEXIS 31457, 2010 WL 1391937 *5-6 (N.D. Ohio March 31, 2010) (Safeguard not engaging in debt collection), aff'd in part, rev'd in part on other grounds, Glazer II, supra; Platek v. Safeguard Props. Inc.*, 2013 U.S. Dist. LEXIS 137175, 2013 WL 5357157 *1 (W.D. Pa. Sept. 25, 2013) (allegations that Safeguard winterized foreclosed-upon homes were insufficient to establish it was a debt collector).

*Alqaq*, 2014 U.S. Dist. LEXIS 59366, *9-11.

After considering the arguments in each of these cases, including the *Matthews*, *Flippin*, *Frazier* and *Bywater* cases relied on by Borrowers, the court instead "follow[ed] the reasoning stated in *Hill*, *Gordon*, and *Deegan*," in holding that "[t]he alleged conduct of [the plaintiff-lender] was incidental to debt collection and was not dispossession or disablement of property to enforce a security interest within the purview of § 1692f(6)(A)," and therefore the FDCPA does not apply. *Id.*, *11.

This Court should adopt the *Alqaq* court's persuasive reasoning, which takes into account each of the prior decisions by court in the Northern District and elsewhere, including those cited in Borrowers' Response. The only other 2014 decision cited by Borrowers – *Bywater* – did not undertake the *Alqaq* court's district-wide case analysis. *See Bywater v. Wells Fargo Bank, N.A., et al*, No. 13 C 4415, 2014 U.S. Dist. LEXIS 37925 (N.D. Ill. Mar. 24, 2014).

Moreover, Seterus's actions did not (and were not intended to) dispossess Borrowers of the Subject Property. Borrowers contacted Seterus on March 17, 2014 to obtain the lockbox code. *See* Counterclaim, ¶ 39. That same day, Borrowers obtained entry to the Subject Property. *See Id.*, ¶ 43. Thus, by their Borrowers' own allegations, Seterus did not dispossess them of the Subject Property.

Borrowers also cite *Simpson v. Safeguard Props., L.L.C.*, No. 13 C 2453, 2013 U.S. Dist. LEXIS 82408 (N.D. Ill. June 12, 2013), alleging that it is "on all fours" with this case and that it

12

demonstrates Safeguard's debt collector status. Contrary to Borrowers' assertions, *Simpson* is inapposite.

In *Simpson*, Safeguard was alleged to have left various notices on the borrower's premises, instructing her that she must pay a certain amount to cure her delinquency. The court determined these were communications in connection with the collection of debt. *Simpson*, 2013 U.S. Dist. LEXIS 82408, *10.

No such allegations exist here against either Safeguard or Seterus, and winterizing the Subject Property, unlike requesting payment to cure a default, plainly is not debt collection.

Accordingly, this Court should dismiss Borrowers' purported FDCPA claim with prejudice.

## VI. Borrower's Supposed Tortious Interference Claim Fails.

Borrowers' purported claim for tortious interference with contractual relations fails because Borrowers cannot allege that they suffered any damages, and because Seterus could not have interfered in the contract.

Rather than address Seterus's arguments in their Response, Borrowers merely recite the elements of tortious interference and conclude that Seterus induced a breach of the short sale contract. *See* Response, p. 20.

Borrowers do not explain how the short sale contract could be breached when they admit it was cancelled by the potential buyers. *See* Counterclaim, ¶¶ 57, 178.

Moreover, Borrowers allege that Seterus was acting for Fannie Mae at all relevant times. *See* Counterclaim, ¶¶ 73-81. Further, Borrowers allege Seterus "materially interfered" with Borrowers' "contractual relations with the Buyers and Fannie Mae," although Fannie Mae is not a party to the short sale contract. *See* Counterclaim, ¶ 183; Short Sale Agreement (Ex. B to

13

Counterclaim).

Assuming these allegations are true, as the Fannie Mae Defendants must for purposes of their Motion to Dismiss, Borrowers' purported claim fails because an agent generally cannot tortiously interfere with the contracts of its principal. *See, e.g., Traum v. Equitable Life Assurance Soc'y*, 240 F. Supp. 2d 776, 792 (N.D. Ill. 2002) ("An agent of a principal is conditionally privileged against a claim that it interfered in a third party's relationship with the principal").

"To overcome the privilege, plaintiffs must allege or prove that a defendant acted in its own interests and contrary to the interests of its principal, or engage in conduct totally unrelated or antagonistic to the interest giving rise to the privilege." *Citylink Group, Ltd. v. Hyatt Corp.*, 313 Ill. App. 3d 829, 841, 729 N.E.2d 869, 877 (1st Dist. 2000).

Borrowers' Response ignores the fact that they do not allege that Seterus acted in its own interests, or contrary to the interests of Fannie Mae, or that it engaged in conduct antagonistic to Fannie Mae's interests.

Moreover, Borrowers' Response ignores the fact that they failed to plead any actual damages, as required.

For all these reasons, Borrowers' purported tortious interference claim fails, and should be dismissed with prejudice.

**VII. Borrowers' Intrusion on the Seclusion Claim Should Be Dismissed With Prejudice.**

Borrowers conceded they do not have an intrusion upon seclusion claim. *See* Brief, p. 20. Accordingly, Borrowers' purported intrusion upon the seclusion claim should be dismissed with prejudice, and without leave to amend.

WHEREFORE, Fannie Mae and Seterus request that this Court dismiss the

Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice and without leave to amend, and provide such further and additional relief as it deems just and appropriate.

Date: November 21, 2014						Respectfully submitted,

**FEDERAL NATIONAL MORTGAGE ASSOCIATION and SETERUS, INC.,**

Ralph T. Wutscher						Defendants,
Jeffrey T. Karek
Charles J. Ochab
MCGINNIS WUTSCHER BEIRAMEE LLP
105 W. Madison Street, 18th Floor
Chicago, Illinois 60602
Tel. (312) 416-6170			By:	   /s/  Jeffrey T. Karek		
Fax (312) 284-4751					One of Their Attorneys

### Certificate of Service

Jeffrey T. Karek, an attorney, certifies that on **November 21, 2014**, he caused the service of a true and correct copy of this Motion and any referenced exhibits via ECF on all parties who are Filing Users.

				   /s/  Jeffrey T. Karek