IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | No. 14-cv-04664 |
| v. | ) ) | Judge Andrea R. Wood |
| GEORGE L. OBRADOVICH, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

George and Jennifer Obradovich, originally named as defendants in this residential mortgage foreclosure action, have filed a counterclaim against the plaintiff, Federal National Mortgage Association ("Fannie Mae") and two of its alleged agents, Seterus Inc. and Safeguard Properties, LLC (together, "Counter-Defendants"). The Obradoviches allege that, although they had moved to another state, they had not abandoned their property and thus the Counter-Defendants changed the locks on the home prematurely. The Obradoviches further claim that the Counter-Defendants improperly winterized the home, causing $25,000 in damage and the loss of a short sale commitment. Their counterclaim seeks relief for common law trespass, breach of contract, intrusion upon seclusion, and tortious interference with contract, as well as alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, and the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Now before the Court are the joint motion of Fannie Mae and Seterus (Dkt. No. 28) and the separate motion of Safeguard (Dkt. No. 33) to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons detailed below, the motions are granted as to Counts II, IV, and VII of the counterclaim and otherwise denied.

## BACKGROUND

Fannie Mae originally brought this action in the Circuit Court of DuPage County, Illinois. The Obradoviches removed the case to this Court and filed a counterclaim against Fannie Mae; Seterus, which is the entity alleged to be Fannie Mae's loan servicing agent; and Safeguard, a company allegedly hired to protect the property. The following allegations are taken from the Obradoviches' counterclaim and accepted as true for purposes of the Counter-Defendants' Rule 12(b)(6) motions. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

As alleged in the counterclaim, the Obradoviches owned a single-family home in Villa Park, Illinois, which they rented to tenants when they moved to Florida in August 2011. (Countercl. ¶¶ 9, 18, Dkt. No. 14.) The Obradoviches ended up evicting the tenants for failing to pay their rent. (*Id.* ¶ 19.) But they continued to pay for utilities at the home, including water, gas, and electric service, even after they listed the property for a short sale in September 2013. (*Id.* ¶¶ 20, 21.) At the time the Obradoviches listed the property for short sale, its appraised value was $165,000. (*Id.* ¶ 24.) In January 2014, Fannie Mae and Seterus had the property appraised and it was again valued at $165,000. (*Id.* ¶ 32.) In February 2014, the Obradoviches, with Fannie Mae's approval, entered into a short sale contract for a sale price of $160,000. (*Id.* ¶¶ 34.) The sale was scheduled to close in April 2014. (*Id.* ¶ 36.)

In March 2014, the prospective buyers and a real estate agent went to the home for a walk-through and found that the locks had been changed. (*Id.* ¶ 37.) After repeated requests to Seterus, the Obradoviches were eventually granted access to the home and found extensive damage inside. (*Id.* ¶¶ 13, 40.) The living room was covered in water, the radiators were covered with holes and rust spots, and the main water supply had been shut off and secured by a zip tie.

2

(*Id.* ¶ 40.) A notice posted in the basement of the home stated that the home had been winterized by Safeguard pursuant to a work order issued by Seterus and Fannie Mae. (*Id.* ¶ 42.) The Obradoviches claim that, during the winterization process, Safeguard failed to drain the radiators prior to shutting off the water, which caused the water left in the radiators to freeze and rupture the pipes. (*Id.* ¶ 44.) The floors and ceilings were ruined by the resulting water damage and by toxic mold. (*Id.*)

The prospective buyers estimated that repairs to the home would cost $25,000; they accordingly asked that the sale price be reduced to $135,000. (*Id.* ¶¶ 49, 50.) The Obradoviches applied to Fannie Mae for approval of the lower sale price so that the short sale could go forward. (*Id.* ¶ 54.) But Fannie Mae and Seterus failed to approve the new sale price before the scheduled closing date and as a result the short sale was not completed. (*Id.* ¶ 57.) Fannie Mae commenced this foreclosure action in April 2014, while the value of the property was still being disputed and before the scheduled short sale closing date. (*Id.* ¶ 55, 56.) None of the Counter-Defendants repaired the damage to the home or compensated the Obradoviches. (*Id.* ¶¶ 55, 70.)

In their counterclaim, the Obradoviches seek damages from all of the Counter-Defendants for trespass to real property (Count I), intrusion upon seclusion (Count II), negligence (Count V), and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III). They also assert claims against the Counter-Defendants Seterus and Safeguard for violation of the Fair Debt Collection Practices Act (Count VI) and for tortious interference with their contracts and contractual expectations (Count VII). And finally, they seek damages from Fannie Mae and Seterus (together, "Fannie Mae Defendants") for breach of the mortgage agreement (Count IV). In their respective motions, the Fannie Mae Defendants and Safeguard each contend that the counterclaim is insufficient to state a claim for relief.

## DISCUSSION

Since Federal Rule of Civil Procedure 12(b) expressly applies to "a claim for relief in any pleading," the Court's consideration of the Counter-Defendants' motions to dismiss the counterclaim is governed by the same standards commonly applied to motions to dismiss complaints. Fed. R. Civ. P. 12(b); *Cozzi Iron & Metal,* 250 F.3d at 574. All well-pleaded allegations are taken as true and viewed in the light most favorable to the pleading party. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The counterclaim must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015).

**I.      Trespass Claim**

Count I of the counterclaim seeks relief for common law trespass. The Counter-Defendants assert that the trespass claim is insufficient as a matter of law. Under Illinois law, a trespasser is one who enters another's land for his or her own purposes without permission, invitation, or right. *Lange v. Fisher Real Estate Dev. Corp.*, 832 N.E.2d 274, 277 (Ill. App. Ct. 2005). Here, the Counter-Defendants contend that they were given the right to enter the Obradovich property by the mortgage. Section 9 of the mortgage agreement provides that if the borrower fails to perform its obligations under the agreement or "has abandoned the property," then the lender may do "whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument," including securing the property. (Mortgage § 9, Dkt. No. 14-1.)[1] The Counter-Defendants argue that the Obradoviches defaulted on their obligations under the mortgage agreement by failing to make required payments and that they

---

[1] Because the mortgage is attached to the counterclaim as an exhibit, it is properly considered in determining the sufficiency of that pleading. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

abandoned the property, thereby triggering the lender's right to protect the property and establishing that their entry was not a trespass.

But, as noted above, the right granted to the lender upon breach or abandonment by the borrower was the right to do "whatever is reasonable or appropriate." While securing the property is expressly included within that right by the terms of the document, the extent of the lender's other rights in the event of breach or abandonment is subject to the general requirement that the lender's actions be reasonable or appropriate. Whether actions are reasonable is a question of fact. *See Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 763 (7th Cir. 2010) (interpretation of "commercially reasonable" contract language is question of fact); *Smith v. Great Am. Restaurants, Inc.*, 969 F.2d 430, 439 (7th Cir. 1992) (plaintiff's common law obligation of "reasonable" mitigation of damages is question of fact). In addition, whether or not the Obradoviches actually breached the mortgage agreement or abandoned the property are facts that have been alleged by Fannie Mae but not yet proven. Although their assertion that they kept current on their payments is conspicuously limited to the period up to September 2013 (*see* Countercl. ¶ 17, Dkt. No. 14), the Obradoviches have denied that they defaulted on the payments. (Answer ¶ 3(J), Dkt. No. 11.) They have also alleged that they did not abandon the property. (Countercl. ¶¶ 39, 127, Dkt. No. 14.)

Thus, the question of whether the Counter-Defendants' right to take steps to protect the property was triggered by a breach or abandonment by the Obradoviches, as well as the question of whether the steps they took were the reasonable or appropriate actions permitted by the contract, cannot be determined at the pleading stage. *Cocroft v. HSBC Bank USA, N.A.*, No. 10 C 3408, 2014 WL 700495 (N.D. Ill. Feb. 24, 2014), *aff'd*, 796 F.3d 680 (7th Cir. 2015), which Fannie Mae cites in support of its position that the Counter-Defendants were granted the right to

take the actions they performed, does not indicate a different conclusion. In *Cocroft,* the district court was asked to decide a summary judgment motion rather than a motion to dismiss a pleading and reviewed an evidentiary record that established that the mortgagors had indeed defaulted. 2014 WL 700495, at *5. Since the Counter-Defendants' right to enter the Obradovich property has yet to be determined here, the Court cannot conclude that any such right defeats the trespass claim as a matter of law. The motions to dismiss are accordingly denied as to Count I of the counterclaim.

**II.     Intrusion upon Seclusion Claim**

In response to the Counter-Defendants' arguments challenging their claim for intrusion upon seclusion, the Obradoviches have indicated their intent to dismiss that claim. Thus, the motions to dismiss are granted as to Count II of the counterclaim without opposition.

**III.    Illinois Consumer Fraud and Deceptive Business Practices Act Claim**

Count III of the counterclaim seeks relief under the ICFA. That statute is intended to protect consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.,* 775 N.E.2d 951, 960 (Ill. 2002). The Counter-Defendants contend that Count III fails to allege plausibly a deceptive communication that would trigger ICFA liability. They argue that an ICFA claim must allege a deceptive communication with the specificity that Federal Rule of Civil Procedure 9(b) demands of fraud claims and that the counterclaim fails to do so because it does not identify specific communications or reliance upon them.

But an ICFA claim need not be based upon an allegation of a deceptive communication; the statute also prohibits unfair commercial conduct. *Robinson,* 775 N.E.2d at 960. Whether conduct is unfair for purposes of the statute is determined by (1) whether the practice offends

6

public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008). An ICFA claim for unfairness need not meet the pleading standards of Rule 9(b). *Id.* at 670.

Where a statutory framework provides a consumer with a right to notice before he is deprived of possession of his property, an allegation that a defendant circumvented the statutory procedure and deprived that consumer of his property without the required notice sufficiently alleges an offense to public policy, oppressiveness, and injury for purposes of an ICFA unfairness claim. *Hill v. PS Illinois Trust*, 856 N.E.2d 560, 569 (Ill. App. Ct. 2006). Allegations of attempts to take possession of mortgaged real property prior to the completion of the steps required by the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1101, have been held to state an ICFA claim sufficient to survive a motion to dismiss. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 827 (N.D. Ill. 2013).

The Counter-Defendants correctly observe that § 505/10a of the ICFA limits relief under the statute to plaintiffs who have suffered actual damage. *See* 815 ILCS 505/10a. They argue that the Obradoviches have alleged no actual damage because their counterclaim concedes that they were offered the opportunity to deliver a deed to their property in lieu of foreclosure. But the Obradoviches also allege that the Counter-Defendants' actions caused $25,000 in damage to their home. (Countercl. ¶ 49, Dkt. No. 14.) Although the parties focus much of their argument on the downstream consequences of these damages and their presumed impact following the Obradoviches' loss of the property, the pleadings do not suggest that the Obradoviches' interest in the property has been terminated. The allegation of $25,000 in actual damages to property in which they still have an ownership interest is sufficient to meet the ICFA's actual damages

7

requirement. Since the Obradoviches allege that they have suffered actual damages, they are entitled to bring their ICFA counterclaim under § 505/10a, which permits suit by any "person" who suffers actual damages. Safeguard's assertion that they cannot bring a claim under the statute because they are not "consumers" as defined by the act must therefore be rejected. *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). The Counter-Defendants' motions to dismiss are denied as to Count III.

### IV. Breach of Contract Claim

Count IV of the counterclaim asserts a claim for breach of contract. The Obradoviches claim that the mortgage agreement required Fannie Mae to comply with federal and state law, that the mortgage and Illinois law require the Obradoviches to maintain exclusive possession of the property while they remain titleholders, and that the mortgage and Illinois law required Fannie Mae to take reasonable steps to determine whether the property was abandoned before taking action to protect its interest. (Countercl. ¶¶ 124-27, Dkt. No. 14.)

The Obradoviches cite § 16 of the mortgage as the basis for their assertion that the mortgage required Fannie Mae to comply with federal and state law. The relevant portion of that section provides that the mortgage shall be governed by federal law and the law of the jurisdiction in which the property is located. (Mortgage § 16, Dkt. No. 14-1.) Under Illinois law, those laws in existence at the time a contract is executed are deemed to be part of the contract as though they were expressly incorporated therein. *Costello v. Grundon*, 651 F.3d 614, 640 (7th Cir. 2011). Accordingly, by pleading breach of a statutory provision governing the parties' relationship, a plaintiff states a claim for breach of contract. *Wendorf v. Landers*, 755 F. Supp. 2d 972, 980 (N.D. Ill. 2010) (citing *Braye v. Archer-Daniels-Midland Co.*, 676 N.E.2d 1295, 1303 (Ill. 1997)).

8

The statutory provision invoked by the Obradoviches as the basis for their claim to exclusive possession of the property is the Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1701. By its terms, that statutory provision governs "the right to possession of the mortgaged real estate during foreclosure." 735 ILCS 5/15-1701(a). The statute defines "foreclosure" as "an action" commenced pursuant to the statute. 735 ILCS 5/15-1203. As noted above, the Obradoviches allege that they were denied access to their home when the locks were changed and that they discovered damage to the home when their access was restored in March 2014. (Countercl. ¶ 37, Dkt. No. 14.) They do not allege any subsequent infringement upon their right to exclusive possession. Yet the foreclosure action was not filed until the following month. (*Id.* ¶ 55.) Thus, according to their own allegations, any violation of the Obradoviches' alleged right of possession occurred before, not during, the foreclosure, and therefore is not governed by the statute. *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 688 (7th Cir. 2015).

In further support of their breach of contract claim, the Obradoviches invoke the language of the mortgage agreement itself. They contend that § 6 of the agreement required them to maintain exclusive possession of the property. But that provision merely obligated them to occupy the property as their principal residence for one year after the execution of the mortgage. (*See* Mortgage § 6, Dkt. No. 14-1.) The mortgage was dated May 26, 2009 (*id.* at 1); any restrictions it imposed had thus lapsed by 2014, *i.e.*, the time of the events at issue here. The Obradoviches also contend that § 9 of the mortgage agreement, which gave Fannie Mae the right under prescribed circumstances to protect the property, prohibited the lender from taking such action in the absence of the required circumstances. But that provision of the mortgage purports only to describe a right granted to the lender. It does not define actions beyond the parameters of

9

that right as breaches of the agreement and the Obradoviches cite no authority that would dictate any such construction.

In sum, the Obradoviches' breach of contract claim is not supported by statute or by the language of the mortgage agreement itself. The Counter-Defendants' motions are accordingly granted as to Count IV.

**V.     Negligence Claim**

Count V of the counterclaim asserts a claim for negligence based on the purported failure by the Counter-Defendants, or their agents, to perform the winterizing at the home properly. In seeking to dismiss the negligence claim, the Counter-Defendants argue that the Obradoviches have failed to plead damages caused by the alleged negligence. But, as noted above, this argument rests on the presumption that the Obradoviches's interest in the property has been terminated. (Fannie Mae Defs. Memo. at 10, Dkt. No. 29 ("Borrowers do not allege how the rejection of a short sale puts them in a worse position than if they were to accept the deed in lieu of foreclosure. Thus, Borrowers do not allege they actually suffered any damages.").) Since the Obradoviches have explicitly alleged damage to real property in which they still have an interest, the Counter-Defendants' argument is unpersuasive.

Safeguard contends that the negligence claim fails because the Obradoviches have not claimed that it owed a legal duty to them. Tort liability is commonly imposed upon strangers to the plaintiff, however, if they have failed to take reasonable care to avoid foreseeable injury to plaintiff or his property. *Powell v. Star Fireworks Mfg. Co.*, 515 N.E.2d 1280, 1282-84 (Ill. App. Ct. 1987). Safeguard also argues that the Obradoviches' negligence claim is barred by the economic loss doctrine. That doctrine bars tort recovery under Illinois law when damage is caused by "disappointed commercial expectations." *In re Chicago Flood Litig.*, 680 N.E.2d 265,

10

276 (Ill. 1997). But the Obradoviches are not seeking recovery merely for losses resulting from a defective product or poorly performed service; their damages are based on damage to real property and thus recoverable in tort. *Scott & Fetzer Co. v. Montgomery Ward & Co.*, 493 N.E.2d 1022, 1026 (Ill. 1986). Their counterclaim states a claim for relief for negligence and the Counter-Defendants' motions to dismiss are denied as to Count V.

**VI.     Fair Debt Collection Practices Act Claim**

In Count VI of their counterclaim, the Obradoviches allege violations of the Fair Debt Collection Practices Act. They claim that Seterus and Safeguard violated the FDCPA by entering their property without legal right, denying them access by changing locks on the house, damaging the property and reducing its value, and demanding fees to which they were not entitled.

The FDCPA governs the conduct of "debt collectors," a term that for most of the statute's restrictive provisions is defined to include those persons whose business either has a principal purpose of collecting debts or regularly collects debts that are owed to another. 15 U.S.C.A. § 1692a. Although Safeguard argues that it is not a debt collector, the counterclaim explicitly alleges to the contrary. (*See* Countercl. ¶¶ 147-149, Dkt. No. 14.) Since the Obradoviches' factual allegations must be taken as true at the motion to dismiss stage, Safeguard's denials do not provide a basis for dismissal. Safeguard also argues that the Obradoviches' allegations regarding Safeguard's status as a debt collector are conclusory. But since the details of its principal and regular business activities are within the knowledge of the company rather than the pleaders, requiring them to allege unknown details at this stage would be inappropriate. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007)

Seterus and Safeguard both argue that their actions to protect the property and the additional fees they imposed were authorized by the mortgage agreement. But, as discussed above, neither their legal authority to commence protection activities nor the propriety of the actions they took is clear on the pleadings. The motions to dismiss are denied as to Count VI.

**VII.     Tortious Interference with Contractual Relations Claim**

Finally, the Obradoviches allege in Count VII of their counterclaim that Seterus and Safeguard tortiously interfered with their contractual relations by causing the cancellation of their short sale contract. As they acknowledge, a breach of the contract at issue by the party contracting with the plaintiff is a necessary element of a tortious interference claim under Illinois law. *Purmal v. Robert N. Wadington & Assocs.*, 820 N.E.2d 86, 98 (Ill. App. Ct. 2004). Yet the Obradoviches do not claim that their prospective buyers breached their sale contract. To the contrary, the sale contract, which is attached to their counterclaim, provides that either party could void the agreement if issues identified by the buyer's pre-closing inspection could not be resolved. (Real Estate Contract § 10(b), Dkt. No. 14-2.) The Obradoviches cite no authority that a third party's proper exercise of a contractual "out" provision is the equivalent of a breach for purposes of a tortious interference claim under Illinois law.

Nor have the Obradoviches stated a claim for tortious interference with prospective economic advantage. That tort requires that the defendant direct its tortious conduct toward the party with whom the plaintiff had an expectation of a business relationship. *Schuler v. Abbott Labs.,* 639 N.E.2d 144, 147 (1993). The counterclaim here contains no allegation that Seterus or Safeguard directed any communication or activity toward the prospective short-sale buyers. The motions to dismiss are thus granted as to Count VII of the counterclaim.

## CONCLUSION

For the foregoing reasons, the Counter-Defendants' motions to dismiss (Dkt. Nos. 28, 33) are granted as to Counts II, IV, and VII of the counterclaim and otherwise denied.

ENTERED:

Dated: March 29, 2016

Andrea R. Wood
United States District Judge