**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA; | Plaintiff, | CIVIL ACTION<br><br>File No. 1:14-cv-4664<br><br>JURY TRIAL DEMANDED |
| v. | | |
| GEORGE L. OBRADOVICH; JENNIFER M. OBRADOVICH; UNKNOWN OWNERS AND NON-RECORD CLAIMANTS; | Defendants. | Judge: Hon. Andrea R. Wood<br><br>Magistrate Judge:<br>Hon. Sidney I. Schenkier |

| | | |
|---|---|---|
| GEORGE L. OBRADOVICH; JENNIFER M. OBRADOVICH; | Counter-Plaintiffs, | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"); SETERUS, INC.; SAFEGUARD PROPERTIES, LLC; AND YJM DEVELOPMENT, INC; | v.<br><br>Counter/Third-Party Defendants. | JURY TRIAL DEMANDED |

**GEORGE AND JENNIFER OBRADOVICH'S FIRST**
**AMENDED COUNTERCLAIMS AND AMENDED THIRD PARTY CLAIMS**

Counter-Plaintiffs, GEORGE and JENNIFER OBRADOVICH, by the undersigned

attorneys, file these first amended counterclaims and first amended third-party claims against

Counter-Defendant FANNIE MAE, and Counter-Defendants and Third-Party Defendants

SETERUS, INC., SAFEGUARD PROPERTIES, LLC, and YJM DEVELOPMENT, INC. as

follows:

1

**NATURE OF THE ACTION**

1.   Counter-Plaintiffs and Third-Party Plaintiffs Obradovich bring these claims against

FANNIE MAE, SETERUS, INC., SAFEGUARD PROPERTIES, LLC, and YJM

DEVELOPMENT, INC. (collectively "Defendants") for damages resulting from trespass,

negligence, and violations of the Illinois Consumer Fraud and Deceptive Practices Act and the

Fair Debt Collection Practices Act.

2.   All of the claims stated herein stem from the damage, destruction, and the illegal entry

upon Obradovich's real property by Defendants without Obradovich's authorization or consent,

which resulted in Obradovich's loss of their real property and the rescission of a short sale

contract designed to avoid foreclosure.

3.   All of the claims stated herein stem from the same transaction or occurrence as the

foreclosure claim asserted by Fannie Mae against Obradovich.

**JURISDICTION AND VENUE**

4.   This Court has jurisdiction on the basis of removal pursuant to 28 U.S.C. § 1446.

5.   Diversity jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1332(a), as

there is complete diversity between the parties and the amount in controversy exceeds

$75,000.00, excluding costs and fees.

6.   Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337,

as the action arises under the laws of the United States.

7.   The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

8.   Venue is proper pursuant to 28 U.S.C. § 1391 as the subject property is situated in this

District, and a substantial part of the events or omissions occurred in this District.

## PARTIES

9. Counter-Plaintiffs and Third-Party Plaintiffs GEORGE AND JENNIFER OBRADOVICH (collectively "Obradovich") are natural persons who currently reside at 970 Country Club Avenue, Daytona Beach, Florida 32114. At all times relevant to the causes of action, Obradovich also owned a single family home located at 920 S. Summit Avenue, Villa Park, IL 60181 ("subject property").

10. Counter-Defendant FANNIE MAE is a Government Sponsored Enterprise, organized and existing under the laws of the United States of America, with its headquarters in Washington, D.C. Fannie Mae is a federally-chartered corporation and financial agent of the United States in the business of originating and purchasing mortgage loans, and collecting mortgage loans in default, including those in foreclosure.

11. At all times relevant, Fannie Mae was the purported owner and creditor of the subject loan.

12. Third-Party Defendant SETERUS, INC. ("Seterus") is a Delaware corporation with its principal place of business in Oregon. Seterus is a foreign corporation in the business of collecting debts and servicing mortgage loans for mortgage lenders and creditors across the country, including in the state of Illinois.

13. At all times relevant, Seterus was Fannie Mae's loan servicer for the subject loan.

14. Third-Party Defendant SAFEGUARD PROPERTIES, LLC ("Safeguard") is a Delaware corporation with its principal office in Valley View, Ohio. Safeguard is a foreign corporation authorized to do business in Illinois and is in the business of providing home preservation and debt collection services to lenders and companies that provide mortgage financial services to Illinois residents.

15. Safeguard is Fannie Mae and Seterus' agent and property preservation specialist for the subject loan and subject property.

16. Third-Party Defendant YJM DEVELOPMENT, INC. ("YJM") is an Illinois General Contractor. YJM is in the business of providing home preservation and debt collection services to lenders and companies that provide mortgage financial services to Illinois residents.

17. YJM is Fannie Mae, Seterus, and Safeguard's agent and property preservation specialist for the subject loan and subject property.

### GENERAL ALLEGATIONS COMMON TO ALL COUNTS

18. On May 26, 2009, Obradovich refinanced the mortgage loan on their home with Bank of America, N.A. ("BANA"). Property taxes and homeowners insurance were both paid through escrow. *See* Exhibit A attached hereto is a true and correct copy of the mortgage contract.

19. Obradovich never missed a payment and they were never late on the subject loan through September 2013.

20. In August 2011, Obradovich moved to Florida for employment purposes, and rented the subject property to tenants.

21. The tenants were subsequently evicted for failing to pay rent.

22. Obradovich made substantial upgrades and repairs to the subject property out-of-pocket and listed the subject property for a short sale in September 2013.

23. While the subject property was listed for sale, Obradovich continued to pay the utilities, including water, gas, and electricity.

24. The subject property was heated by radiators, which were fueled by hot water from a boiler. Both water and gas were required to heat the subject property.

25. While Obradovich remained in possession of the subject property they maintained the heat in the home at 64 degrees.

26. At the time that Obradovich listed the subject property for short sale it was in excellent condition and worth $165,000.00.

27. Obradovich found short sale buyers ("Buyers") for the subject property in October 2013.

28. In October 2013, Obradovich discovered that servicing and/or ownership of the subject loan were transferred from BANA to Seterus. The transfer delayed the short sale.

29. On November 11, 2013, Obradovich received a Notice of Transfer of Servicing from Seterus.

30. On November 13, 2013, Obradovich received a Validation Notice from Seterus pursuant to the Fair Debt Collection Practices Act.

31. On November 25, 2013, Obradovich received a letter from Fannie Mae advising that foreclosure would soon be filed. This letter was Fannie Mae's initial communication with Obradovich. The letter stipulated that Fannie Mae was the owner/creditor of the subject loan.[1]

32. The transfer of servicing from BANA to Seterus was completed December 1, 2013.

33. On December 9, 2013, Obradovich sent Seterus the short sale packet with all necessary information.

34. On or about January 24, 2014, Seterus and Fannie Mae sent their appraiser to the subject property, who did not find any significant damage and appraised the property at $165,000.00.

35. On January 30, 2014, while Obradovich's short sale application was pending, Fannie Mae referred the loan to foreclosure notwithstanding the existence of a pending short sale contract that would satisfy Obradovich's debt obligation to Fannie Mae.

---

[1] At all times relevant, Fannie Mae was the purported owner and creditor of the subject loan and BANA and Seterus were acting as Fannie Mae's servicers.

36. On February 25, 2014, Fannie Mae approved the buyers' short sale offer of $160,000.00 and Obradovich entered into a binding short sale contract with the Buyers. *See* Exhibit B attached hereto is a true and correct copy of the short sale contract.

37. On February 27, 2014, Obradovich received notice that their homeowners insurance plan was canceled at the request of either Seterus or Fannie Mae.

38. On March 10, 2014, Obradovich received the final written short sale approval from Seterus on behalf of Fannie Mae. The closing was scheduled for April 25, 2014.

**a. Obradovich's Discovery of Damage to the Property**

39. Unbeknownst to Obradovich, in January or February 2014, Safeguard hired YJM as its debt collector, vendor, and "property preservation" specialist.

40. On March 17, 2014, the Buyers requested to do another walk through at the subject property before the closing. Upon arrival, the Buyers and real estate agent discovered that a lock box had been placed on the door and the locks to the doors at the subject property had been changed.

41. On March 17, 2014, Obradovich called Seterus for the code to the lock box. Obradovich complained of the locks being changed and that Seterus unlawfully restricted access to the subject property.

42. Seterus told Obradovich that they had "every right to change the locks and take possession of the property because it was abandoned." Obradovich replied that they had not abandoned the subject property and that Seterus could not legally bar them from entry.

43. Only after repeated requests did Seterus provide Obradovich with the lock box code to access the subject property. Upon entering the subject property, Obradovich found the home

destroyed. The living room was covered in water, and the radiators were covered with holes and rust spots. The main water supply had been shut off and secured by a zip tie.

44. There were no notices on the doors or windows to the subject property that the subject property was deemed vacant or abandoned, or that it had been winterized.

45. Only one notice was posted in the basement that winterization was performed by Safeguard pursuant to a work order issued by Seterus and Fannie Mae. No other notices were posted.

46. Neither Seterus nor Safeguard had notified Obradovich that they intended to hire YJM to winterize, or that YJM had winterized, the subject property. Obradovich had no prior knowledge of the winterization before March 17, 2014. YJM never contacted Obradovich about winterizing the property.

47. During winterization, while working on behalf of Fannie Mae, Seterus, and Safeguard, YJM failed to drain the radiators prior to shutting off the water, causing the water left inside the radiators to freeze and rupture the pipes. The water soaked the floor boards and ceilings, causing them to buckle and develop toxic mold.

**b.** **Obradovich's Reporting of the Damage and Value Dispute**

48. On March 18, 2014, Obradovich reported the damage to Seterus. Seterus' short sale negotiator responded stating that she could not address Obradovich's concerns. Seterus advised that Safeguard would send a contractor to the subject property to repair the damage.

49. Aside from the locks being changed, there were no signs of forced entry.

50. On March 18, 2014, Seterus' short sale negotiator advised Obradovich that if the Buyers reduced the offer based on the damage, that Obradovich must submit a "value dispute" to Fannie Mae. Seterus further advised that Obradovich should contact Safeguard directly with their claim.

51. On March 18, 2014, Obradovich contacted Safeguard as directed to by Seterus. Safeguard admitted that it was in the property in late January 2014 to winterize, presumably after the appraisal. Obradovich filed a claim with Safeguard. Safeguard advised Obradovich to contact Seterus to complete their claim regarding the improper winterization and required repairs.

52. On March 21, 2014, Safeguard advised that its investigation was pending and would be completed after March 23, 2014 when its contractor was to return to the subject property.

53. On March 25, 2014, the Buyers hired an independent contractor to assess the damage to the subject property, who estimated the repairs to cost in excess of $25,000.00.

54. The Buyers demanded that Obradovich reduce the selling price to $135,000.00 to account for the $25,000.00 in damage. The new offer needed to be approved by Fannie Mae and Seterus before the previously scheduled closing date of April 25, 2014.

55. On March 25, 2014, Obradovich's homeowners insurance was canceled at the request of Seterus and Fannie Mae.

56. On April 18, 2014, Safeguard advised that it had forwarded Obradovich's claim to Seterus, and there was nothing more that it could do without Seterus' approval.

57. On April 18, 2014, Seterus advised that its "property preservation vendor" had reviewed the claim for damage and denied Obradovich's claim.

58. On April 21, 2014, Obradovich were forced to submit a property value dispute to Fannie Mae, disputing the appraised value of the subject property of $160,000.00 and applying for approval of the value of $135,000.00 in order to complete the short sale with the Buyers.

59. On April 23, 2014, during the time that the short sale value was being disputed, Fannie Mae filed foreclosure in the circuit court of DuPage County, case no. 14 CH 569.[2]

---

[2] The foreclosure was removed to this Honorable Court on June 20, 2014.

60. Fannie Mae filed foreclosure before the value dispute was resolved and before the original April 25, 2014 short sale closing date, of which Fannie Mae had actual knowledge.

61. Seterus and Fannie Mae failed to approve or deny the reduced offer, the value dispute, or the reduced short sale offer by the April 25, 2014 closing. As a result, Obradovich lost the short sale contract with the Buyers.

62. On May 9, 2014, Fannie Mae advised Obradovich that according to its records, the subject property had been "properly winterized" by Safeguard.

63. In response, on May 13-14, 2014, Obradovich hired contractors to inspect the mold damage and water damage to the subject property. According to their reports, the subject property had toxic mold and permanent damage. The contractor concluded that water damage resulted from Safeguard's improper winterization, specifically shutting off the main water supply without draining the radiators.

64. On May 19, 2014, Obradovich forwarded the mold and water damage reports to Fannie Mae. In response, Fannie Mae advised that there may be considerable delay in completing their own inspection of the subject property.

65. Obradovich specifically notified Fannie Mae that Seterus' delay in repairing and assessing the damage, the false representations from Safeguard that the winterization was done properly, and further delay from Fannie Mae to resolve the value dispute would cause Obradovich to lose their Buyers at the lower offer of $135,000.00.

66. On May 22, 2014, Fannie Mae advised Obradovich that the $135,000.00 short sale offer and value dispute were denied.

67. Later on May 22, 2014, Obradovich were served with the foreclosure complaint.

68. Thereafter, Fannie Mae advised Obradovich to contact Seterus to execute a deed in lieu of foreclosure.

69. Obradovich complained to Seterus that it had no right to change the locks or winterize the subject property, and that Seterus never provided notice that it deemed the subject property abandoned. Seterus responded that Seterus had notified Obradovich that they were delinquent and that was sufficient notice.

70. At no point in time did any of the Defendants contact Obradovich to ascertain whether Obradovich resided at the subject property, or to receive their authorization to enter the subject property prior to the locks being changed.

71. At no point in time did any of the Defendants obtain a court order granting them possession of the subject property.

72. At all times relevant, Defendants had actual knowledge of Obradovich's short sale listing, the pending short sale contract, scheduled closing date, value dispute for a reduced short sale offer, and that the property had not been abandoned.

73. Defendants never repaired nor compensated Obradovich for the damage to the subject property despite Obradovich's repeated requests and disputes.

74. Upon information and belief, Defendants made and profited from an insurance claim from Obradovich's homeowners insurance, including claims made to any force-placed insurance.

75. As a direct result of Defendants' action and inaction complained of above, Obradovich suffered extreme emotional distress, an increase in stress, loss of time, physical sickness and injury, loss of credit worthiness, denial of credit, imminent loss of the subject property to foreclosure, liability for any deficiency from a foreclosure, increased costs to insure the subject property, and attorney fees and costs to defend the foreclosure and assert related claims.

CAUSES OF ACTION

a. **Agency**

76. Fannie Mae had a consensual, agency relationship with Seterus, Safeguard, YJM, and their vendors or subcontractors, whereby Fannie Mae (as the principal) had the right to control and direct the manner and method of the actions of Seterus, Safeguard, YJM, and their vendors or subcontractors (as the agents) with respect to the subject loan and the subject property. Fannie Mae's agents had the authority to act on behalf of Fannie Mae.

77. Seterus had a consensual, agency relationship with Safeguard, YJM, and their vendors or subcontractors, whereby Seterus (as the principal) had the right to control and direct the manner and method of the actions of Safeguard, YJM, and their vendors or subcontractors (as the agents) with respect to the subject loan and the subject property. Seterus' agents had the authority to act on behalf of Seterus.

78. Safeguard had a consensual, agency relationship with YJM and its vendors or subcontractors, whereby Safeguard (as the principal) had the right to control and direct the manner and method of the actions of YJM and its vendors or subcontractors (as the agents) with respect to the subject loan and the subject property. Safeguard's agents had the authority to act on behalf of Safeguard.

79. Fannie Mae, Seterus, and Safeguard are liable for the acts of their agents, including any activity, errors, or omissions with respect to the subject loan or conduct at the subject property.

### b. <u>Willful Conduct</u>

80. All of the Defendants maintain manuals, work order guidelines, and contractor guidelines that set forth the procedures for enforcing security instruments and performing services on real property. The procedures incorporate federal guidelines and state law.

81. The procedures maintained by Defendants include compensation for work done to real property, including for changing locks and winterization. Compensation ranges from $10.00 to upwards of $200.00 for work done, with winterization earning the most compensation.

82. In addition to violating Illinois law, all of the Defendants failed to follow or adhere to their own guidelines and procedures with respect to Obradovich and the subject property.

83. Instead, the Defendants carried out illegal activities at the subject property, violated Illinois law and basic property rights, disregarded federal guidelines, and ignored their own procedures to gain an undue profit and an expedited intrusion into Obradovich's home.

84. With respect to all of the allegations and causes of action stated herein, all of the Defendants acted intentionally, willfully, deliberately, and with a wanton disregard of the rights of Obradovich, as well as a conscious disregard for their own formalized procedures.

85. All of the Defendants acted with conscious indifference as to the existing circumstances and conditions of Obradovich's rights, family, and property. The Defendants' course of action demonstrates a deliberate intent to harm Obradovich, collect a debt from Obradovich, expedite the foreclosure and turnover of the subject property for collection, profit from work performed and repairs to the subject property, avoid the added expense of repairing the property in lieu of pursuing foreclosure, and an utter indifference for the safety of Obradovich, their property, and their interest in mitigating damages and avoiding foreclosure through a short sale.

## COUNTERCLAIMS AND THIRD-PARTY CLAIMS

### COUNT I – TRESPASS TO REAL PROPERTY
### (ALL DEFENDANTS)

86. Obradovich restate and reallege paragraphs 1 through 85 as if fully set forth herein.

87. At all times relevant, Obradovich were the owners of the subject property and had a legal right to exclusive possession of the subject property.

88. Without consent or a right to possession, Defendants and their agents to forcibly entered the subject property, changed the locks, shut off the water and heat, and caused property damage.

89. Defendants knew that Obradovich owned and occupied the subject property, had listed it for a short sale to avoid foreclosure, and had a pending short sale agreement.

90. Defendants acted with reckless, willful, and conscious disregard for Obradovich's property rights. Defendants' forced entry and trespass upon the subject property interfered with Obradovich and their ownership, use, enjoyment, possession of the premises, and ability to mitigate their damages via a short sale and avoid foreclosure.

91. Defendants' forced entry and trespass upon the subject property caused damage to Obradovich, loss and damage to property, great harm, humiliation, distress, and suffering.

92. It is Defendants' normal business practice to ignore the possessory and ownership rights of homeowners and withhold possession without obtaining a court order or searching the Recorder of Deeds to confirm rights to property.

WHEREFORE, Counter-Plaintiffs and Third-Party Plaintiffs GEORGE AND JENNIFER OBRADOVICH respectfully request that this Honorable Court:

    a. Enter judgment in their favor and against all Defendants;

    b. Award Obradovich actual and punitive damages in an amount determined at trial;

    c. Award Obradovich their reasonable attorney's fees and costs; and

    d. Award any other relief this Honorable Court deems equitable and just.

## COUNT II – VIOLATION OF THE ILLINOIS CONSUMER
## FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
## (ALL DEFENDANTS)

93. Obradovich restate and reallege paragraphs 1 through 92 as if fully set forth herein.

94. Obradovich are persons as defined within the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 et seq.

95. All Defendants are engaged in commerce in the state of Illinois with regard to Obradovich and the subject property.

96. Fannie Mae specializes in mortgage lending and debt collection, which is in the stream of commerce.

97. Seterus specializes in mortgage servicing and debt collection, which is in the stream of commerce.

98. Safeguard specializes in property preservation and facilitating debt collection, which is within the stream of commerce and one of the collection tools utilized by mortgage loan servicers and lenders in their regular course of business.

99. YJM specializes in property preservation and facilitating debt collection, which is within the stream of commerce and one of the collection tools utilized by mortgage loan servicers and lenders in their regular course of business.

100.  It is the regular business practice of Defendants to ignore the possessory and ownership rights of homeowners prior to a foreclosure being filed or obtaining a court order for pre-judgment possession.

101.  Fannie Mae and Seterus unfairly directed Safeguard and YJM to dispossess Obradovich of the subject property without a legal or factual basis for doing so.

102. It was unfair for Defendants to lock Obradovich out of their own property and force them to abandon possession of their property.

103. Safeguard and YJM were not legally permitted to change locks in Illinois as Safeguard is not licensed under the Locksmith Act, 225 ILCS 447/30. It was unfair for Safeguard to change the locks to the subject property without a license.

104. It was unfair for Defendants to intentionally cause and fail to repair permanent damage to the property in order to prevent the short sale and bully Obradovich into an expedited foreclosure process.

105. Defendants intentionally communicated deceptive information to Obradovich regarding the short sale process that they relied upon to their detriment.

106. Seterus and Fannie Mae deceptively advised Obradovich to continue to submit short sale documents when they had no intention of processing their documents or short sale application in good faith; Seterus and Fannie Mae made efforts to stall the short sale application process in order to expedite the foreclosure.

107. Moreover, it was unfair and deceptive for Fannie Mae and Seterus to direct and induce Obradovich to submit and continue a lengthy short sale application process, when Fannie Mae had no intention of processing or approving the short sale after the intentional damage that Safeguard and YJM caused to the subject property.

108. Seterus and Safeguard unfairly and deceptively advised Obradovich to submit repeated claims for repair of the damage when Safeguard had no intention to evaluate their claims and repair the damage.

109. Obradovich had little choice but to submit to the unfair and deceptive short sale application process and denial, damage to their real property, and foreclosure of the subject property as a result of Defendants' deceptive and unfair acts.

110. Defendants intended Obradovich to rely on their deceptive and unfair acts; Obradovich did in fact rely on Defendants' deceptive and unfair acts.

111. An award of punitive damages is appropriate because Defendants' conduct described above was outrageous, willful and wanton, and showed a reckless disregard for the rights of Obradovich.

WHEREFORE, Counter-Plaintiffs and Third-Party Plaintiffs GEORGE AND JENNIFER OBRADOVICH respectfully request that this Honorable Court:

a. Enter judgment in their favor and against all Defendants;

b. Award Obradovich actual and punitive damages in an amount determined at trial;

c. Award Obradovich their reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and

d. Award any other relief this Honorable Court deems equitable and just.

## COUNT III – NEGLIGENCE
### (ALL DEFENDANTS)

112.  Obradovich restate and reallege paragraphs 1 through 111 as though fully set forth herein.

113.  Defendants voluntarily exercised control and dominion over the subject property and Obradovich's real property.

114.  Once a party voluntarily undertakes to perform a service, it must do so in a manner that does not increase the risk of harm to the other person who relies on the undertaking.

115.  Defendants took affirmative steps to control access to the subject property by re-keying the locks, refusing to provide access to the new keys for a period of time, and refusing to repair the damage upon request.

116.  Defendants' actions with respect to ordering and taking possession of Obradovich's real property carried with them an obligation and duty to act reasonably and for the benefit of Obradovich.

117.  Defendants had a duty to take reasonable steps to protect Obradovich's property, comply with Illinois law, and follow the practices and procedures within their own manual(s) and work order guidelines.

118.  Because of their voluntarily undertakings, Defendants carried the burden of determining whether the subject property was abandoned and whether a foreclosure case had been filed or court order entered granting them possession prior to entering the subject property, causing permanent damage, and restricting Obradovich's access.

119.   Defendants breached their duty by (a) violating Illinois law, (b) failing to follow their own formalized procedures, and (c) failing to use reasonable care in selecting and monitoring its vendors, contractors, subcontractors, and agents at the subject property.

120. Defendants breached their duty to act as prudent property managers by contributing to and allowing the destruction of Obradovich's real property. Defendants failed to fulfill an assumed duty by failing to prevent the destruction described herein.

121. It was reasonably foreseeable that by taking control and dominion of the subject property, actively restricting Obradovich's access to their real and personal property, and causing the water pipes to burst would harm Obradovich.

122. It was reasonably foreseeable that by taking control of the subject property in violation of Illinois law, and without following the procedures within their own manual(s), Defendants would harm Obradovich and diminish their ability to sell the subject property to avoid foreclosure.

123. Defendants were aware that their actions would likely result in injury to Obradovich and their family, but willfully ignored their duty of reasonable care.

124. Defendants' failure to act with reasonable conduct and care has directly resulted in damage, destruction, and the loss of real property.

125. Defendants' negligent conduct is the proximate cause of the damages described herein.

126. Defendants acted with such gross and willful negligence as to indicate willful and wanton disregard of the rights of Obradovich.

WHEREFORE, Counter-Plaintiffs and Third-Party Plaintiffs GEORGE AND JENNIFER OBRADOVICH respectfully request that this Honorable Court:

  a. Enter judgment in their favor and against all Defendants;

  b. Award Obradovich actual and punitive damages in an amount determined at trial;

  c. Award Obradovich their reasonable attorney fees and costs; and

  d. Award any other relief this Honorable Court deems equitable and just.

### COUNT IV – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (SETERUS, SAFEGUARD, AND YJM)

127.  Obradovich restate and reallege paragraphs 1 through 126 as though fully set forth herein.

128.  The Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., imposes civil liability upon debt collectors.

129.  Seterus, Safeguard, and YJM qualify as debt collectors under the FDCPA §§ 1692a(6) and 1692f(6) as each uses an instrumentality of interstate commerce or the mails to collect debts and enforce security interests.

130.  Seterus, Safeguard, and YJM qualify as debt collectors under the FDCPA §§ 1692a(6) and 1692f(6) as they each acquired rights to the subject loan after it was in default.

131.  Seterus, Safeguard, and YJM regularly collect debts, enforce security interests, and facilitate debt collection.

132.  Safeguard and YJM are in the business of securing properties, changing locks, and facilitating debt collection for mortgage lenders and others in the foreclosure industry by expediting the transfer of possession of property through non-judicial means.

133.  Seterus, Safeguard, and YJM arrange field services, debt collection, and default-related services for homes upon which Fannie Mae is seeking to collect a debt.

134.  Safeguard and YJM are not licensed under the Locksmith Act, 225 ILCS 447/5-3, et seq., and therefore not permitted to change locks in Illinois under Illinois law.

135.  Safeguard, through its agent and vendor YJM, changed the locks at the subject property for Seterus and Fannie Mae without a license.

136.  Seterus, Safeguard, and YJM caused damage to Obradovich's real property in order to facilitate the collection of the subject debt through foreclosure.

137.  Safeguard acquired the authority from Seterus to collect a consumer debt by performing services at the subject property.

138.  YJM acquired the authority from Safeguard to collect a consumer debt by performing services at the subject property.

139.  Safeguard performed all acts complained of at the direction of Seterus and Fannie Mae and without any right to possession of the subject property or an order from a court.

140.  YJM performed all acts complained at the direction of Safeguard and without any right to possession of the subject property or an order from a court.

141.  Safeguard, through its agent and vendor YJM, evicted and dispossessed Obradovich from their property without reason and without regard for Obradovich's rights, or their interest in mitigating damage through a short sale.

### a.  Violation of  § 1692e

142.  Seterus, Safeguard, and YJM violated § 1692e by falsely claiming that they had a right to enter, possess, and change the locks to the subject property.

143.  Seterus, Safeguard, and YJM failed to post notifications on the subject property stating that it was vacant or abandoned and that they had the right to enter the subject property.

144.  After YJM changed the locks to the subject property, Seterus and Safeguard possessed the code to the lockbox containing the keys and willfully restricted Obradovich's, their real estate agent's, or their Buyers' access to the keys and the subject property.

145.  Seterus, Safeguard, and YJM's actions were in furtherance of efforts to restrict access to the subject property and facilitate the collection of a debt on behalf of Fannie Mae through non-judicial means.

### b.   Violation of  § 1692d

146.  Seterus, Safeguard, and YJM violated § 1692d by engaging in conduct to harass, oppress, and abuse Obradovich in connection with the subject debt.

147.  Seterus, Safeguard, and YJM engaged in abusive and oppressive conduct by forcibly evicting Obradovich, and by damaging, destroying real property.

148.  Seterus, Safeguard, and YJM harassed and oppressed Obradovich by:

> i.   deliberately providing them with misinformation about the status of repairs to the subject property and their intent to repair or take responsibility for the damage;
>
> ii.   facilitating the denial of the short sale by taking steps to permanently reduce the value of the subject property;
>
> iii.   causing damage that resulted in toxic mold, which presented a health hazard to Obradovich or any person that entered the subject property; and
>
> iv.   causing damage that directly resulted in denial and cancelation of the short sale and resulting foreclosure.

### c.   Violation of  § 1692f

149.  Seterus, Safeguard, and YJM violated § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt.

150.  Seterus, Safeguard, and YJM's unauthorized entry upon the subject property was in furtherance of efforts to collect debts for Seterus and Fannie Mae through non-judicial means.

151.  Safeguard and YJM are not legally permitted to change locks in Illinois as they are not licensed under the Locksmith Act, 225 ILCS 447/30.

152.  Seterus, Safeguard, and YJM violated § 1692f(6)(A) by taking or threatening to take non-judicial action and employing self help to dispossess Obradovich of their property when there was no present right to possession of the property through Fannie Mae's security interest.

153.  Seterus and Safeguard systemized their process of monitoring mortgage payments, but failed to safeguard against premature possession of properties before foreclosure or obtaining a valid court order for possession.

154.  Seterus had a practice whereby "property servicers" or "vendors" such as Safeguard and YJM were tasked to perform services prematurely or automatically after a borrower became delinquent on mortgage payments in order to make a profit.

155.  Seterus and Safeguard arbitrarily arranged to provide property services to homes at risk of foreclosure without verifying whether a foreclosure or rightful transfer of possession had taken place.

156.  YJM arbitrarily conducted property services to homes at risk of foreclosure without verifying whether a foreclosure, rightful transfer of possession, or abandonment of the property had taken place.

> **d.  Violation of §§ 1692f, e, and g(a)**

157.  Seterus, Safeguard, and YJM violated §§ 1692f, e, and g(a) by reporting and assessing fees against Obradovich and their property that were not authorized by the mortgage contract or the law.

158.  Seterus, Safeguard, and YJM violated § 1692f(1) by seeking to collect property inspection and other corporate fees, and impose fees for alterations done to property that were not expressly authorized by the mortgage or by Illinois law, all while purposely avoiding any repair costs required to fix any damage resulting from the same alterations done to the property.

159.  Seterus, Safeguard, and YJM reported costs and fees against Obradovich and the subject loan for the wrongful debt collection actions.

WHEREFORE, Third-Party Plaintiffs GEORGE AND JENNIFER OBRADOVICH respectfully request that this Honorable Court:

a.   Enter judgment in their favor and against Seterus, Safeguard, and YJM;

b.   Declare that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

c.   Award Obradovich statutory and actual damages in an amount determined at trial;

d.   Order the deletion of all adverse credit reporting related to the loan;

e.   Award Obradovich costs and reasonable attorney's fees under 15 U.S.C. § 1692k; and

f.   Award any other relief as this Honorable Court deems just and appropriate.

**GEORGE AND JENNIFER OBRADOVICH DEMAND TRIAL BY JURY**

Dated: April 12, 2016

Respectfully submitted on behalf of:

Counter-Plaintiffs George & Jennifer Obradovich,

*/s/ Mara A. Baltabols*
Mara A. Baltabols, Esq. #6299033
Counsel for Obradovich
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone: (630) 575-8181